[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/22/99
THOMAS K. KAHN
CLERK

————————

No. 95-2963

————————

D.C. Docket No. 92-369-CIV-T-24E

SELMA JENNINGS, individually and as
next friend of Maximo Edwards, a minor,
and MAXIMO EDWARDS, a minor,

Plaintiffs-Appellants

versus

BIC CORPORATION and
SOUTHLAND CORPORATION,
d.b.a. 7-ELEVEN,

Defendants-Appellees,

MONTGOMERY WARD & CO.,

Defendant-Third-Party-Plaintiff-Appellee,

PAJAMA CORPORATION OF
AMERICA, a New York
corporation,

Third-Party-Defendant.

————————

Appeal from the United States District Court
for the Middle District of Florida

————————

**(July 22, 1999)**

Before COX and BARKETT, Circuit Judges, and SMITH*, Senior Circuit Judge.
SMITH, Senior Circuit Judge:

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by
designation.

Selma Jennings and Maximo Edwards (collectively, "Jennings") sued the makers and distributors of a pair of pajamas and of a disposable lighter after Maximo was injured when his pajamas caught fire. The District Court for the Middle District of Florida granted partial summary judgment to the BIC Corporation ("BIC"), holding that BIC had no duty to child-proof its lighters under Florida law. The district court also denied Jennings' motion for leave to amend the complaint to state a cause of action under the Consumer Products Safety Act, 15 U.S.C. § 2051 et seq. Jennings appeals these rulings, along with evidentiary rulings and the jury instructions. We affirm.

*Facts and Procedural History*

Maximo Edwards was injured on November 25, 1987 when his pajamas were accidentally lit on fire by his three-year-old brother, who was playing with a cigarette lighter. Maximo's mother, Selma Jennings, filed suit against BIC, the maker of the lighter; Southland Corporation ("Southland"), which operated the 7-Eleven store where the lighter was purchased; and Montgomery Ward & Co. ("Wards"), where the pajamas were purchased. As relevant here, the suit alleged that BIC was liable in both negligence and strict liability because its lighter suffered from a design defect; specifically, it was alleged to be unreasonably dangerous because BIC failed to child-proof it. The suit also alleged that

2

Southland was liable for distributing the defective product, and that Wards was liable for distributing the flammable pajamas.

Jennings filed suit in Florida state court and the suit was removed by the defendants to the U.S. District Court for the Middle District of Florida. The district court granted partial summary judgment to BIC on August 29, 1994, holding that Florida law imposes no duty on a manufacturer to child-proof its cigarette lighters. On November 17, 1994, the district court denied Jennings' motion for leave to amend her complaint to state a cause of action under the Consumer Products Safety Act, 15 U.S.C. § 2051 et seq. The case was tried to a jury. During trial, the court ruled against Jennings on several matters relating to expert witness testimony. The jury held for the defendants on all counts. Jennings appeals the trial court's grant of summary judgment to BIC, its denial of leave to amend, and its evidentiary rulings. Jennings also appeals the jury verdict on the ground that the trial court gave erroneous instructions.

*Standard of Review*

We review a district court's grant of summary judgment completely and independently, with all facts and reasonable inferences therefrom viewed in the light most favorable to the nonmoving party. Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). We apply the same standard as the district court. Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998). We affirm the grant of summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1369 (11th Cir. 1982).

"A district court's decision to grant or deny leave to amend is reviewed for abuse of discretion." Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1404 (11th Cir. 1994).

"A district court's decision to admit or exclude expert testimony under Rule 702 is reviewed for abuse of discretion." United States v. Gilliard, 133 F.3d 809, 812 (11th Cir. 1998) (citing General Elec. Co. v. Joiner, 522 U.S. 136, 141

(1997)).[1]

Our review of a trial court's jury instructions is limited.  Eskra v. Provident Life & Accident Ins. Co., 125 F.3d 1406, 1415 (11th Cir. 1997).  If the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction.  Id.  "We will reverse the trial court because of an erroneous instruction only if we are 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'  [Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997)] (citation omitted).  And we will find reversible error in the refusal to give a requested instruction only if (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party."  Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998).

*Duty to Child-proof Cigarette Lighters*

Jennings' complaint stated a cause of action against BIC in strict liability, on the basis that its cigarette lighters are defectively designed by reason of their lack of child-proof safety features.  The complaint also stated a cause of action in

---

[1] "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702.

negligence based on an alleged failure to exercise due care in designing the lighters. The district court concluded that, under Florida law, BIC had no duty to make its lighters child-proof and therefore granted summary judgment to BIC.

Federal jurisdiction in this case rests on the diversity of the citizenship of the parties. Therefore, we apply the law of the appropriate state, in this case Florida. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Florida law provides no explicit answer to the central issue in this case, however, because the Florida Supreme Court has not considered the duty of manufacturers to child-proof cigarette lighters.[2]

Although no binding Florida precedent is directly on point, decisions of the Florida courts provide sufficient and significant guidance as to how the Florida Supreme Court would rule on the issue if the issue were considered. Our consideration of Florida law convinces us that BIC's decision not to child-proof its cigarette lighters does not subject it to liability under either strict liability or negligence.

---

[2] Jennings asserts that certification of this issue to the Florida Supreme Court is appropriate. Certification of a state law question is a matter of discretion. Escareno v. Noltina Crucible & Refractory Corp., 139 F.3d 1456, 1461 (11th Cir. 1998). The decision to certify a question is based on a number of factors, "'[t]he most important [of which] are the closeness of the question and the existence of sufficient sources of state law.'" Id. (quoting State of Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 274 (5th Cir. 1976)). In this case, existing Florida law provides substantial confidence in how the Florida Supreme Court would rule on the question. We do not consider certification appropriate in this case.

*A. Strict Liability*

Florida adopted the strict products liability standard of the Restatement (Second) of Torts § 402(a) in <u>West v. Caterpillar Tractor Co.</u>, 336 So. 2d 80, 87 (Fla. 1976). Under this standard, the manufacturer of a defective product can be held liable if the manufacturer made the product in question, if the product has a defect that renders it unreasonably dangerous, and if the unreasonably dangerous condition is the proximate cause of the plaintiff's injury. <u>Id.</u> The manufacturer's liability also extends to bystanders who are injured by the defective product. <u>Id.</u> at 89. The issue in this case is whether the lack of child-proof or child-resistant features on a cigarette lighter renders the lighter defective and unreasonably dangerous.

"Under the theory of strict products liability adopted in <u>West v. Caterpillar Tractor Co.</u>, 336 So. 2d 80 (Fla. 1976), a product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning." <u>Ferayorni v. Hyundai Motor Co.</u>, 711 So. 2d 1167, 1170 (Fla. Dist. Ct. App. 1998). Jennings has not alleged that the lighter had a manufacturing defect or that a lack of warning made it unreasonably dangerous. The issue in this case is therefore limited to whether the alleged <u>design</u> defect of the lighter, i.e., its lack of child-proof features, renders it unreasonably dangerous.

7

The defectiveness of a design is determined based on an objective standard, not from the viewpoint of any specific user.  See Hobart Corp. v. Siegle, 600 So. 2d 503, 505 (Fla. Dist. Ct. App. 1992).  The Hobart court noted that the Florida Standard Jury Instructions allow the jury to be instructed on the consumer expectation test of § 402A,  the risk-benefit test, or both.  Id. at 504 n.3.  However, "[b]oth tests require application of the objective standard to determine the defective nature of the product.  The consumer expectation test requires consideration of the ordinary consumer's expectations.  The risk-benefit analysis requires consideration of the 'normal public expectation of danger.'"  Id. (quoting Auburn Mach. Works Co., Inc. v. Jones, 366 So. 2d 1167, 1170 (Fla. 1979)).

See also Norton v. Snapper Power Equip., 806 F.2d 1545, 1548 (11th Cir. 1987), which notes that the Florida Supreme Court has adopted a balancing test for determining whether a product is "unreasonably dangerous."  The factors to be considered include "public knowledge and expectation of the danger."  Id.

Thus, defectiveness is not judged from a child's perspective, but from the perspective of an "ordinary consumer" or the "normal public expectation."  The ordinary consumer and general public appreciate that lighters can start dangerous fires and therefore that care is required in handling them.  A lighter without child-proof features is not "defective" based on objective standard; it could only be

8

found "defective" based on a subjective, child's-perspective standard. Since neither test of defectiveness allowed under the Florida Standard Jury Instructions permits such a subjective determination, a lighter lacking child-proof features is as a matter of law not defective.

In addition, as defined by the Restatement (Second) of Torts § 402(a) and as adopted by the Florida Supreme Court, the term "strict liability" is something of a misnomer. A manufacturer is not strictly liable for all injuries caused by its product, however it is used. On the contrary, a manufacturer is liable only when the product is used as intended. See High v. Westinghouse Elec. Corp., 610 So. 2d 1259, 1262 (Fla. 1992). In High, the Florida Supreme Court held that "section 402A applies to intended uses of products for which they were produced. When an injury occurs under those circumstances, the manufacturer is strictly liable." Id. Since "dismantling a product is not an intended use," the court held that Westinghouse was not strictly liable for injuries suffered when its transformers were dismantled. Id. The court's majority did not adopt the dissenting view that "'intended use' includes unintended uses of a product if they were reasonably foreseeable by the defendant." Id. at 1263 (Barkett, J., dissenting).

Cigarette lighters are intended to be used to set fire to things that are intended to be burned: cigarettes, cigars, candles, etc. They are not intended to be

9

used as children's playthings.  Indeed, the packaging of BIC lighters bears the warning: "Keep out of reach of children."  Since use of a lighter as a children's plaything was not its intended use, the manufacturer is not strictly liable for injuries incurred when it is so used, even if such use was reasonably foreseeable by BIC.  See High, 610 So. 2d at 1263.

## *B. Negligence*

The district court did not separately treat the issues of negligence and strict liability.  Rather, the court considered Florida trial court decisions and decisions on point from other jurisdictions and concluded that "Defendant BIC does not have a duty under Florida law to design, manufacture, and market a 'child-proof' lighter."  The court granted BIC's motion for partial summary judgment on the basis of this lack of duty.

Some Florida case law supports the position that, in regard to liability for an allegedly defectively designed product, negligence and strict liability are essentially different ways of stating the same duty.  See Husky Indus., Inc. v. Black, 434 So. 2d 988, 991 (Fla. Dist. Ct. App. 1983) ("A defectively designed product is one that has been negligently designed.").  However, we do not think this position represents current Florida law.

More recent cases make clear that Florida courts impose different standards

in assessing liability under negligence and strict products liability.

> [I]t is unnecessary in a strict liability action to show that the manufacturer has been negligent in any way. In fact he can be found liable even though he was utterly non-negligent. It is thus obvious that strict liability has been placed into a user's arsenal of remedies as an addition to the traditional tort remedy of negligence, not in displacement of it. … Hence, we note, in Thursby v. Reynolds Metals Co., 466 So. 2d 245 (Fla. 1st DCA 1984), rev. denied, 476 So. 2d 676 (Fla. 1985), the court disapproved the notion that our products liability law made strict liability and negligence two separate verbalizations of a single legal concept.

Moorman v. American Safety Equip. Corp., 594 So. 2d 795, 800-801 (Fla. Dist. Ct. App. 1992). See also Ferayorni, 711 So. 2d at 1170 ("West's progeny have emphasized that the strict liability theories are generally distinct from negligence."); High, 610 So. 2d at 1262 (transformer manufacturer not strictly liable for injuries allegedly incurred in dismantling transformers but possibly liable in negligence for failing to warn of risks to people dismantling transformers).

Thus, although BIC is not strictly liable for the injury caused by its product in this case, it could still be liable if it was negligent in failing to design child-proof features into its lighters. The first element that must be shown to establish negligence is that the defendant owed a duty of care to the plaintiff. See Robertson v. Deak Perera (Miami), Inc., 396 So. 2d 749, 750 (Fla. Dist. Ct. App. 1981) ("In the absence of a duty to the plaintiff, actionable negligence does not exist.").

Florida law imposes a broad duty of care in the negligence context.

11

Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated, "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Kaisner [v. Kolb], 543 So.2d [732,] 735 (citing Stevens v. Jefferson, 436 So. 2d 33, 35 (Fla. 1983)) (emphasis added). … Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken. J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (1912).

McCain v. Florida Power & Light Co., 593 So. 2d 500, 503 (Fla. 1992) (footnote omitted).

Here, it was foreseeable that children would get hold of a BIC lighter, that they would be able to use the lighter because it was not child-proof, and that they would hurt themselves or others by using the lighter inappropriately. The foreseeability of these events happening are supported by the record, which contains a report concluding that 140 people, including 125 children, are killed each year in fires caused by children playing with lighters. Consumer Federation of America, Up in Flames: The Deadly Consequences of Children Playing with Cigarette Lighters, 3 (1987). Their foreseeability is also supported by the number of reported cases arising from lighter-related injuries to children. See, e.g., Todd v. Societe BIC, S.A., 21 F.3d 1402 (7th Cir. 1994); Kirk v. Hanes Corp., 16 F.3d 705 (6th Cir. 1994); Griggs v. BIC Corp., 981 F.2d 1429 (3rd Cir. 1992). Indeed, BIC

12

lighter packages are labeled "Keep out of reach of children," directly demonstrating that BIC appreciated the hazards that their lighters posed in unsupervised little hands.

But it is not foreseeable that a child would buy a lighter or otherwise obtain one without the involvement of an adult. Cigarette lighters are marketed to adults and intended for adult use. Clearly, the "Keep out of reach of children" warning on lighter packaging is there in order to put the adult purchaser, the intended user, on notice that the lighters pose a danger to children. It is reasonable for BIC to assume that the warning on its lighters was sufficient and adequate for the adult purchasers of its products to read, understand, and heed.

It is not reasonable to require BIC to take all possible measures to ensure that its products could not be misused by anyone who might, even foreseeably, come into possession of them. Decisions of the Florida courts demonstrate that a maker or seller of a product need not go to extreme lengths to protect foreseeable users of its products. See Vic Potamkin Chevrolet, Inc. v. Horne, 505 So. 2d 560, 562 (Fla. Dist. Ct. App. 1987) (car dealer not liable in negligence for selling car to apparently incompetent driver; "[a] seller cannot be held liable for harm caused by a 'defective' customer."); Babine v. Gilley's Bronco Shop, Inc., 488 So. 2d 176, 178 (Fla. Dist. Ct. App. 1986) ("[T]here is no requirement for a manufacturer to

13

provide all designed and recommended safety devices with its product. Warning of the need of additional equipment for safe operation of the product is sufficient.").

Under Florida law, therefore, BIC was not required to child-proof its lighters to satisfy its duty of reasonable care. BIC could satisfy that duty using measures short of child-proof safety features; e.g., by supplying a warning to the intended adult purchasers of its products, putting them on notice of the potential danger of such products to children. Since, under Florida law, the exercise of reasonable care clearly does not require child-proofing cigarette lighters, the district court correctly granted summary judgment to BIC on the issue of liability arising out of the lack of child-proof features on BIC lighters.

*Consumer Products Safety Act*

On September 29, 1994, Jennings moved for leave to amend the complaint. Jennings sought to state a claim based on BIC's alleged withholding of information about the dangers of their lighters from the Consumer Products Safety Commission, in violation of the Consumer Products Safety Act ("CPSA"), 15 U.S.C. § 2051 et seq., and the regulations promulgated thereunder. The district court denied the motion on the basis that it would be futile because, although the Eleventh Circuit had not ruled on the issue, the great weight of precedent holds that the CPSA does not give rise to a private cause of action for violation of its reporting provisions. The court also denied the motion on the basis that it was untimely, being filed over five months after the court's deadline for amending the pleadings. We find it unnecessary to decide the issue whether a private cause of action exists under the CPSA's reporting provisions because the district court acted within its discretion in denying Jennings' motion as untimely.

Although leave to amend should be liberally granted when necessary in the interest of justice, FED. R. CIV. P. 15(a), the decision is committed to the district court's discretion and grant or denial of leave to amend is reviewed for abuse of discretion. Smith v. Duff and Phelps, Inc., 5 F.3d 488, 493 (11th Cir. 1993). The district court in this case denied Jennings' motion because "Plaintiffs have failed to

show good cause why they should be permitted to amend their complaint approximately two months before trial is scheduled to commence and over four months after the deadline of April 15, 1994, for the amending of pleadings has passed."

The U.S. Supreme Court has held that undue delay is an adequate basis for denying leave to amend.

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court.

Foman v. Davis, 371 U.S. 178, 182 (1962). This court has found delay to be undue where the motion for leave to amend was filed thirty months after the original complaint and three weeks before trial, where the only apparent reason for the delay was the plaintiff's retention of a new attorney. Rhodes v. Amarillo Hosp. Dist., 654 F.2d 1148, 1154 (5th Cir. 1981).[3] See also Smith, 5 F.3d at 493-494 (delay of three years justified denial of leave to amend).

---

[3] The Eleventh Circuit has adopted as binding precedent decisions of the Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Here, the plaintiffs waited to move for leave to amend until thirty-four months after their original complaint was filed. Their motion came two months before the trial was scheduled to begin, and five months after the district court's deadline for amending the pleadings. The motion provides no basis for the delay other than that "it has recently come to [Plaintiffs'] attention that certain failures and derelictions of Defendant BIC Corporation give rise to an additional cause of action," without any further explanation. We are unable to say that the court abused its discretion in denying leave to amend because of undue delay.

*Expert Testimony*

Jennings asserts that the district court erred by admitting the testimony of Wards' expert witness David W. Herring and by refusing to either allow Plaintiffs' expert witness David Kessinger to testify in rebuttal or to grant a continuance to allow Plaintiffs' expert Leighton W. Sisson to testify in rebuttal. As BIC points out, however, Plaintiffs' counsel at trial conceded that the substance of Mr. Herrings' testimony was disclosed in a pre-trial disclosure statement. Although Plaintiffs apparently failed to appreciate the significance of Mr. Herrings' testimony and failed to prepare to rebut it adequately, the district court acted within its discretion in admitting the testimony and in its rulings on Plaintiffs' expert testimony proffered in rebuttal.

In addition, Jennings asserts that the district court erred in refusing to grant a continuance to allow testimony of Plaintiffs' expert Dwight Bellinger. The district court denied the continuance because, inter alia, Mr. Bellinger's testimony would be duplicative of that of Plaintiffs' other experts. In view of the availability of Plaintiffs' other expert witnesses and alternative means (e.g., deposition) of providing Mr. Bellinger's testimony, we cannot say that the court abused its discretion in denying the motion for a continuance.

*Jury Instructions*

Jennings cites as reversible error the district court's refusal to give an "intervening negligence" instruction to the jury. Jennings also asserts that the court's definition of "unreasonably dangerous" confused the jury because it "ignore[d] foreseeable users and concentrate[d] only on intended users." Finally, Jennings asserts that the court erred in refusing to give a requested instruction on a guardianship account for any damages awarded.

We apply a deferential standard in reviewing jury instructions. Eskra, 125 F.3d at 1415. "This Court examines jury instructions as a whole to determine whether they fairly and adequately addressed the issue and correctly stated the law." Christopher v. Cutter Labs., 53 F.3d 1184, 1190 (11th Cir. 1995). The district court committed no reversible error in its jury instructions.

18

The court gave the jury the following instruction (emphasis added):

Negligence may be a legal cause of damage even though it operates in combination with an act of another, some natural cause, or some other cause if such other cause occurs a the same time as the negligence and if the negligence contributes substantially to producing such damage.

As relevant here, this instruction differed from Jennings' requested "intervening negligence" instruction only in that the requested instruction would have replaced the above-underlined phrase with the phrase "occurring after the negligence occurs if such other cause was itself reasonably foreseeable." Thus, the only difference between the instructions is in the timing of any other act contributing to the injury.

According to Jennings, the requested instruction "would have permitted the jury to find that BIC should have anticipated the possibility that a child would obtain possession of the lighter in question and be injured." In addition, Jennings asserts that "failure to give this instruction confused the jury be [sic] allowing them to assume that Selma Jenning's [sic] negligence was the legal cause of the injuries to Maximo Edwards."

We see no merit in either of these assertions. First, the instructions concern only the contributing acts of persons other than BIC; they are not relevant to whether BIC should have foreseen the possibility of children coming into possession of BIC lighters. Second, the instruction given to the jury accurately

19

reflected Florida negligence law and therefore could not have confused the jury. The Notes on Use to the Florida Standard Jury Instruction on intervening negligence state that it is given "only in cases in which the court concludes that there is a jury issue as to the presence and effect of an intervening cause." The court determined that there was no issue of intervening negligence in this case and Jennings cites no error in this determination. The court's refusal to give the requested instruction was not erroneous.

In addition, the district court correctly stated Florida law when it defined the term "unreasonably dangerous" to ignore foreseeable users and concentrate on intended users. See High v. Westinghouse Elec. Corp., 610 So.2d 1259, 1262 (Fla. 1992) ("section 402A applies to intended uses of products for which they were produced," not to unintended uses).

Finally, "we will find reversible error in the refusal to give a requested instruction only if … the failure to give the instruction resulted in prejudicial harm to the requesting party." Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir. 1998). Here, the jury determined that none of the defendants were liable for Maximo Edwards' injury, and therefore the jury never considered the issue of damages. Thus, the court's refusal to give Jennings' requested instruction regarding a guardianship account for any damage award is not reversible error.

*Conclusion*

The district court properly granted partial summary judgment to BIC and acted within its discretion in denying Jennings' motion for leave to amend the complaint and in its evidentiary rulings. The district court committed no reversible error in instructing the jury. For these reasons, the decision of the district court is affirmed.

AFFIRMED

BARKETT, Circuit Judge, dissenting:

Although conceding that no binding Florida precedent is directly on point, the majority claims that its resolution of this case represents "how the Florida Supreme Court would rule on the issue if the issue were considered." Jennings v. BIC Corp., __ F.3d __, ___ (11th Cir. 1999). I respectfully dissent both because existing Florida law points to a conclusion opposite to that reached by the majority on the merits and because if any debate exists on how the Florida Supreme Court would rule, we should simply ask that court for a definitive resolution through the procedure established for that purpose. There is no reason to decline to certify this question of pure Florida law to the Florida Supreme Court so that Florida judges can determine the parameters of Florida law.

## A. Strict Liability

The majority offers two grounds to support its conclusion that no claim lies against BIC in strict liability, neither of which stand up to scrutiny. First, as the majority explains, the question of whether a design is defective is appropriately answered with reference to an "objective standard" that involves "consideration of the ordinary consumer's expectations," or, put another way, consideration of the "normal public expectation of danger." See Hobart Corp. v. Siegle, 600 So. 2d 503, 505 n.4 (Fla. Dist. Ct. App. 1992) (including "common knowledge and

22

normal public expectation of danger" among the criteria for determining whether a product is defectively designed).  In answering this question, the majority asserts that the "normal public expectation of danger" relating to lighters would not include the likelihood of fires started by careless children.  However, given that, by the majority's own admission, "140 people, including 125 children, are killed each year in fires caused by children playing with lighters," Jennings, __ F.3d at __ (citing Consumer Federation of America, Up in Flames: The Deadly Consequences of Children Playing with Cigarette Lighters 3 (1987)), it is hard to credit the conclusion that the "normal public expectation of danger" would not include the risk of fires so caused, and that expectation of such a risk would arise only if one adopted "a subjective, child's-perspective standard." Id.  To the contrary, in light of the high casualty rate and the obviousness of the danger, a jury could well find BIC lighters to be defectively designed under an objective, ordinary consumer standard.

Similarly, the majority's argument that High v. Westinghouse Elec. Corp., 610 So. 2d 1259 (Fla. 1992), precludes a jury from determining whether strict liability applies is premised on a misreading of High and of Florida law in general. The majority posits that "a manufacturer is [strictly] liable only when the product is used as intended," and asserts, on the basis of High, that a child's use of a

cigarette lighter to set fire to things that are not intended to be burned is an unintended use under Florida law.  Jennings, __ F.3d at __.  The High court did hold, rightly, that a product manufacturer can be held strictly liable when injury results from an "intended use[]" of the product at issue.  High, 610 So. 2d at 1262.  However, the High court neither defined the term "intended use" nor did it exclude reasonable foreseeability as an element thereof.  Rather, limiting itself to the specific facts before it, the court concluded only that unsealing and dismantling the defendant's product – an electrical transformer – in order to salvage junk components was not an intended use of the product and thus that strict liability did not apply for injuries caused by the hazardous fluids that were released when the transformers were dismantled.  Id. (finding, "under these facts, that strict liability does not apply").[1]

High thus provides no support for the majority's assertion that, under Florida law, manufacturers are not strictly liable for injuries caused by reasonably

---

[1] The dissent, arguing that the majority opinion was "deficient . . . in failing to define 'intended uses,'"explained that "[t]he prevailing view recognizes that an 'intended use' includes unintended uses of a product if they were reasonably foreseeable by the defendant." High, 610 So. 2d at 1163 (Barkett, J., dissenting).  Although the dissent disagreed with the majority's disposition, it did so not because of any quarrel with the appropriate standard for strict products liability.  Rather, the dissent disagreed with the majority because "foreseeability is usually a jury question," and "[n]either the majority opinion nor the cases cited therein explain why that determination should be removed from the jury in this instance or why, as a matter of law, the manufacturer would not have reasonably foreseen that its product would be dismantled." Id.

24

foreseeable uses of their products. To the contrary, the <u>High</u> majority cites with approval two cases that acknowledge that a determination as to the "intended use" of a product involves an inquiry into "reasonably foreseeable uses." <u>See</u> <u>id.</u> at 1261-62 (citing <u>Kalik v. Allis-Chalmers Corp.</u>, 658 F.Supp. 631 (W.D. Pa. 1987); <u>Wingett v. Teledyne Indus., Inc</u>., 479 N.E. 2d 51 (Ind. 1985), *overruled on other grounds by* <u>Douglass v. Irvin</u>, 549 N.E. 2d 368 (Ind. 1990)).

Applying the reasonable foreseeability standard in Jennings' case would yield a different result than that reached by the majority. The very statistics cited by the majority regarding the annual number of deaths caused by children playing with lighters support the conclusion that the child's use of the lighter was reasonably foreseeable and that BIC could therefore be held liable for the damages resulting therefrom. But to the extent that the application of strict liability to such a reasonably foreseeable use of the defendant's product can be considered an open question of Florida law, I would at least certify it to the Florida Supreme Court for resolution.

## B. Negligence

Turning to the negligence analysis, the majority concedes the first element of the negligence test, that BIC owed a duty of care to Selma Jennings' child. <u>Jennings</u>, __ F.3d at __. The duty element is a question of law which is resolved

25

by determining "whether the defendant created a generalized and foreseeable risk of harming others." Stazenski v. Tennant Co., 617 So. 2d 344, 346 (Fla. Dist. Ct. App. 1993). The majority acknowledges that children fall within the foreseeable zone of risk, recognizing, as noted earlier, that many accidents caused by children playing with lighters result in the deaths of children and adults alike.

Having determined that a duty of care exists, the majority then concludes, *as a matter of law*, that BIC met its duty, noting that Florida courts have held that manufacturers need not go to "extreme lengths" or "take all possible measures" to protect foreseeable users of its products, and that BIC fulfilled its duty of care by placing warning labels on the lighters. Jennings, __ F.3d at __. However, Jennings makes no assertion that BIC should have gone to "extreme lengths" or taken "all possible measures" to make its products safe from children. The claim is that BIC, knowing that children would acquire its lighters and cause injury with them, was negligent in failing to incorporate a child-safety feature into the design. To sustain a cause of action for negligence, Jennings must establish that: (1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages. See Lake Parker Mall, Inc. v. Carson, 327 So. 2d 121, 123 (Fla. Dist. Ct. App.1976). The question before us is whether BIC breached the

26

duty of care the majority concedes BIC owed the plaintiff.

A breach is the failure to use due care to do what a reasonable and prudent person would ordinarily have done under the circumstances. See De Wald v. Quarnstrom, 60 So. 2d 919, 921 (Fla. 1952). With respect to a manufacturer, negligence arises when the failure to use reasonable care results in an unsafe product. Determining whether the manufacturer used reasonable care involves a balancing test wherein the likelihood and the gravity of the potential harm are weighed against the burden of the precaution necessary to avoid that harm. See Auburn Machine Works v. Jones, 366 So. 2d 1167, 1171 (Fla. 1979).

The majority's conclusion in this case – that, *as a matter of law*, a warning was sufficient and that anything more would represent an "extreme" measure – has no basis in Florida law. As the majority recognizes, there are no Florida Supreme Court cases directly on point. It cites only two cases from the Florida District Court of Appeals, neither of which are analogous to the facts here. Vic Potamkin Chevrolet, Inc. v. Horne, 505 So. 2d 560, 562 (Fla. Dist. Ct. App. 1987) was a negligent entrustment case requiring a totally different analytical approach than that of a claim for negligent design. In Potamkin, the plaintiff sued a car dealer for letting an incompetent driver buy a car and drive it away. The buyer lost control of the vehicle and hit a tree, injuring her passenger. The passenger sued, and the

27

court found that the car dealer had fulfilled its duty of care by verifying that the buyer had a valid driver's license. This case is inapposite to the issue presented here. In Jennings' case, the issue is not whether a seller failed to evaluate the fitness of a purchaser, but rather whether a manufacturer is required to do more than warn against the possible misuse of its product by people (in this case, children) to whom it owes a duty of care.

In Babine v. Gilley's Bronco Shop, Inc., 488 So. 2d 176 (Fla. Dist. Ct. App. 1986), the plaintiff sued for injuries sustained when he was thrown from a mechanical bull in a bar. The bar had placed mattresses around the bull to cushion the fall of riders but the mattresses were not adequately pushed together, and when the appellant was thrown off, he hit his head on the floor. The claim was that the mechanical bull was defective because the manufacturer did not supply adequate landing gear and that, because the bull was inherently dangerous, strict liability should apply. The court held that it was not necessary for the manufacturer to provide landing pads with the mechanical bull. It analogized such a claim to that of requiring manufacturers of power saws or welding torches to provide safety glasses or other guards and found that this additional equipment need not be required. A warning that such additional equipment is necessary suffices unless the safety device can be made an "integral part" of the product. Id. at 178. There

is no claim here that the manufacturer should have provided additional equipment along with the lighter but rather that the manufacturer failed to use reasonable care by not developing a safety lock – which would be an "integral part" of the product – to make it more difficult for a child to use it, as, for example, pharmaceutical drug companies did in putting child-proof caps on their containers. It is for a jury to decide, based upon appropriate evidence, whether disposable lighters could incorporate child safety devices at a reasonable cost and without undue burden. And again, where any debate exists as to Florida law, that debate should be resolved by the Florida Supreme Court.

Finally, I disagree with the majority's conclusion that the district court did not err in refusing to give a jury instruction on intervening cause. The appellants' requested instruction provided that, "[n]egligence may also be a legal cause of injury even though it operates in combination with . . . some other cause *occurring after the negligence occurs* if such other cause was itself reasonably foreseeable . . . ." Florida Standard Jury Instruction 5.1(c) (emphasis added). This instruction recognizes that BIC could still be liable even if a later event or action (i.e., a parent leaving a lighter within reach of a small child) also played a role in the injury.

The district court's instruction that "[n]egligence may be a legal cause of damage even though it operates in combination with an act of another, some

29

natural cause, or some other cause *if such other cause occurs at the same time as the negligence . . .*" excluded this possibility. This instruction permitted the jury to assume that any negligence on Selma Jennings' part obliterated any negligence on BIC's part. Because this instruction caused "prejudicial harm to the requesting party," <u>Roberts v. Schaefer Co. v. Hardaway Co.</u>, 152 F.3d 1283, 1295 (11th Cir. 1998), it warrants reversal.