765 So.2d 235 (2000)
Joseph WARREN, a minor, by and through his mother and next friend, Cheryl BRASSELL, Appellant,
v.
K MART CORPORATION, a Michigan Corporation, Appellee.
No. 1D99-3521.
District Court of Appeal of Florida, First District.
August 1, 2000.
*236 Jay C. Floyd of Law Office of Hardee & Floyd, Jacksonville, for Appellant.
Gary A. Bubb, Jacksonville, for Appellee.
LAWRENCE, J.
Joseph Warren (Warren) appeals the dismissal of his complaint against K Mart Corporation (K Mart), with prejudice, for failure to state a cause of action. We affirm.
Warren, on August 9, 1998, purchased carbon dioxide (CO2) cartridges from K Mart, in Duval County. That same day, Warren was blinded in his right eye when a companion fired, from a pellet gun, a pellet propelled by one of the CO2 cartridges purchased from K Mart. Warren's single count complaint sued K Mart on the theory of negligent entrustment, based on his status as an unaccompanied minor[1] at the time of purchase of the CO2 cartridges.
Warren argues that the trial judge erred in dismissing his complaint. We know that:
When ruling on a motion to dismiss for failure to state a cause of action, the trial court must accept the allegations of a complaint as true. Likewise, the appellate court must accept the facts alleged in a complaint as true when reviewing an order that determines the sufficiency of the complaint. Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the de novo standard of review.

Sarkis v. Pafford Oil Co., 697 So.2d 524, 526 (Fla. 1st DCA 1997) (citations omitted) (emphasis added).
The trial judge in the instant case as a matter of law correctly dismissed the complaint. Warren cites no statute or case law making the sale of CO2 cartridges *237 to a minor unlawful or an act of negligence. He instead argues that the sale of CO2 cartridges to minors may have violated the K Mart's internal policy. The standard of care however is set by the community, rather than by a corporation's internal policy. Metropolitan Dade County v. Zapata, 601 So.2d 239, 244 (Fla. 3d DCA 1992) ("[T]his court has held that a jury receiving such evidence must be cautioned that the existence of an internal rule does not itself fix the standard of care. This is necessary because of the public policy in favor of encouraging the voluntary setting of standards higher than those customarily employed in the community.").
Warren nevertheless relies on Kitchen v. K-Mart Corp., 697 So.2d 1200 (Fla.1997) (quashing; affirmatively answering the certified question: "CAN A SELLER OF A FIREARM TO A PURCHASER KNOWN TO THE SELLER TO BE INTOXICATED BE HELD LIABLE TO A THIRD PERSON INJURED BY THE PURCHASER?"; and holding that the seller of a firearm to a buyer who is known to be intoxicated may be held liable by a third person injured through the intoxicated buyer's use of the firearm under the theory of negligent entrustment). Kitchen is inapposite: no firearm was sold in the instant case; no knowledge of intoxication or other special circumstances is alleged.
Warren also relies on McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992) (quashing; reinstating jury verdict; and holding that an electric utility company had the ability to foresee a zone of risk created by the maintenance of an improperly marked underground high-voltage electrical cable, and thus has a greater than usual duty of care, and the evidence supported the jury's conclusion that injury to a mechanical trencher operator was proximately caused by the breach of duty to indicate where the underground electrical cable lay). McCain too is inapposite: no improperly marked underground high-voltage cable is involved here; no failure to warn of danger is alleged.
Warren argues that a CO2 cartridge should be treated like a gun or a car, instrumentalities declared dangerous in various cases. No known American case however holds that a CO2 cartridge is a dangerous instrumentality, so as to impose tort liability. Courts, on the contrary, have held otherwise. See, e.g., Holmes v. J.C. Penney Co., 133 Cal.App.3d 216, 219, 220, 183 Cal.Rptr. 777 (1982) (affirming the dismissal, with prejudice, of a complaint and holding that imposing negligence on the seller of CO2 cartridges would result in a ban on sales by judicial fiat, a ban "within the purview of the Legislature, not the judiciary"; that Penney's policy of not selling CO2 cartridges to minors did not set the standard of care, for "policy established through the initiative of the conscientious and safety minded should not automatically establish the existence of a legal standard of care, because otherwise such initiative would be discouraged"; and that the potentiality for harm is obvious so that a warning would "serve no useful purpose").
Warren, while not pleading strict liability, in effect argues for it. The complaint however alleges neither a product design defect, nor a failure to warn of a hidden product defect. See Restatement (Third) of Torts: Products Liability § 2 and commentary at 16, 31 (1998):
§ 2. CATEGORIES OF PRODUCT DEFECTS
For purposes of determining liability under § 1 [liability of commercial product sellers or distributors for harm caused by defective products]:
(a) A product contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
(b) A product is defective in design when the foreseeable risks of harm posed by the product could have been reduced by the adoption of a reasonable alternative design by the seller or a *238 predecessor in the commercial chain of distribution and the omission of the alternative design renders the product not reasonably safe;
(c) A product is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced by the provision of reasonable instructions or warnings by the seller or a predecessor in the commercial chain of distribution and the omission of the instructions or warnings renders the product not reasonably safe.

Comment:
a. Rationale....
. . . .
j. Subsections (b) and (c), which impose liability for products that are defectively designed or sold without adequate warnings or instructions and are thus not reasonably safe, achieve the same general objectives as does liability predicated on negligence. The major emphasis is on creating incentives for manufacturers to achieve optimal levels of safety in designing and marketing products. Most would agree that society does not benefit from products that are excessively safeautomobiles designed with maximum speeds of 20 miles per hourany more than it benefits from products that are too risky. Society benefits most when just the right, or optimal, amount of built-in product safety is achieved. From the fairness perspective, requiring individual users and consumers to bear appropriate responsibility for proper product use prevents careless users and consumers from being subsidized by more careful users and consumers when the former are paid damages out of funds to which the latter are forced to contribute through higher product prices.
. . . .
Warnings: obvious and generally known risks. In general, no duty exists to warn or instruct regarding risks and risk avoidance measures that should be obvious to, or generally known by, foreseeable product users. When a risk is obvious or generally known, the prospective addressee of a warning will or should already know of its existence. Warning of an obvious or generally known risk in most instances will not provide an effective additional measure of safety. Furthermore, warnings that deal with obvious or generally known risks may be ignored by users and consumers and can diminish the significance of warnings about non-obvious, not-generally known risks. Thus, requiring warnings of obvious or generally known risks reduces the efficacy of warnings generally. Where reasonable minds may differ as to whether the risk was obvious or generally known, the issue is to be decided by the trier of fact. The obviousness of risk may bear on the issue of design defect rather than failure to warn.
(Emphasis added.) The instant case is one, as suggested by the Restatement, where fairness requires the consumer to bear appropriate responsibility for proper product use, in order to prevent careless users and consumers from being subsidized by more careful users.
Warren's complaint was correctly dismissed with prejudice. We thus affirm the order of the trial court.
AFFIRMED.
ALLEN and BENTON, JJ., CONCUR.
NOTES
[1] Warren was born on August 25, 1983.