**Wayne Charles OKEN, Plaintiff,**

v.

**THE MONSANTO COMPANY, the Solaris Group, Scotts Company; Dow Agrosciences LLC, Home Depot U.S.A., Inc., et al., Defendants.**

**No. 017360CV.**

United States District Court,
S.D. Florida.

Aug. 26, 2002.

Ian G. Osur, Law Offices of Ian G. Osur, Miami, FL, W. Staurt Calewell, Law Office of Stuart Calwell, Charleston, WV, for Wayne Charles Oken.

Dean T. Barnhard, Joseph G. Eaton, William E. Padgett, Barnes & Thornburg, Indianapolis, IN, Daniel J. Gerber, Rumberger, Kirk & Caldwell, Orlando, FL, for Dow AgroSciences LLC, DowElan, Dow Chemical Co., Epco, Inc. Rofan Services, Inc.

Douglas J. Chumbley, Carlton Fields, P.A., Miami, FL, for Monsanto Co., Solaris Group.

Samuel A. Danon, Hunton & Williams, Miami, FL, for Scotts Co.

James E. Zloch, Wicker, Smith & Ford, P.A., Fort Lauderdale, FL, for Home Depot USA, Inc.

## ORDER GRANTING DOW DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OMNIBUS ORDER RE OTHER MOTIONS

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Dow Defendants' Motion for Summary Judgment [DE 65], Plaintiff's Motion for Extension of Time to Disclose Experts [DE 32], Dow Defendants' Cross Motion to Bar Plaintiff's Use of Undisclosed Expert

Testimony [DE 35–2], Plaintiff's Motion for New Scheduling Order [DE 42], Dow Defendants' Cross Motion for Extension of Time of Expert Discovery Deadline [DE 55–2], and Dow Defendants' Motions to Strike Affidavits [DE 93 and 96]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

In his complaint, Plaintiff brings claims under Florida law for negligence and strict liability against the Dow Defendants [1] and the Monsanto Defendants [2] for their formulation and manufacture of Ortho Dursban Lawn & Garden Insect Control, which contains the chemical chloropyrifos.[3] Plaintiff alleges that he used the product for his garden as intended, but that it caused him severe neurological, physical and psychological injury. Complaint, ¶ 23. Specifically, Plaintiff alleges negligence and strict liability in the formulation (¶¶ 27a, 31a, 43, 49), manufacture (¶¶ 27b, 31b, 43, 49),[4] and failure to warn of dangerous characteristics of Dursban (¶¶ 27g, 31g, 43, 49), among other allegations in those claims that relate to either of these three possible categories of design defect, manufacturing defect, and failure to warn. See *Jennings v. BIC · Corporation*, 181 F.3d 1250, 1255 (11th Cir.1999), citing *Fer-*

*ayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla.App.1998) (in turn citing *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976)).[5]

Among other motions, the Dow Defendants filed a motion for summary judgment seeking dismissal of all claims based upon preemption by the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA"). Plaintiff opposes the motion. Several other motions relate to expert discovery and submission of affidavits in opposition to the motion for summary judgment. The Court will address the issues in turn.

## I.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

---

**1.** These Defendants include Dow Agrosciences LLC (f/k/a Dow Elanco), Dow Elanco (n/k/a Dow Agrosciences LLC), The Dow Chemical Company, Epco, Inc. and Rofan Services, Inc.

**2.** These Defendants include Monsanto Company, the Solaris Group, and Scotts Company.

**3.** Similar claims are brought against an unidentified distributor of the product, as well as against the seller of the product, Home Depot, Inc.

**4.** The Court had previously denied Defendants' Motion to Dismiss the negligent testing

claims in ¶ 27c and ¶ 31c, though it held that Florida law does not recognize an independent claim of negligent testing, and such claims are subsumed under the negligent manufacturing claims.

**5.** The Court does note that Plaintiff's complaint is somewhat of a shotgun pleading, in that it does not separate out into separate claims the different theories of product liability recognized by Florida law. This lack of separation makes separate analysis of each type of claim somewhat difficult.

L.Ed.2d 265(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505.

### B. FIFRA Preemption

The Dow Defendants motion seeks summary judgment on the grounds of preemption of Plaintiff's state law claims pursuant to FIFRA. The United States Supreme Court held in 1991 that FIFRA does not preempt the entire field of pesticide regulation, but allows state regulation of sale or use apart from labeling or packaging requirements, and "leaves ample room for States and localities to supplement federal efforts," such as an affirmative permit scheme for the actual use of pesticides. *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 612–13, 111 S.Ct. 2476, 2485–86, 115 L.Ed.2d 532 (1991) (holding that FIFRA did not preempt a local ordinance regulating the use of aerial spraying in applying pesticides). The Court analyzed the preemption language in FIFRA to reach this conclusion. Specifically, 7 U.S.C. § 136v (entitled "Authority of States") states that: (a) "A State may regulate the sale or use of any federal registered pesticide or device in the State, but only if and to the extent the regulation does permit any sale or use prohibited by this subchapter" and (b) "Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

Defendants argue that the term "requirements" includes state law actions for damages, while Plaintiff argues that it

does not preclude such actions. While the Supreme Court has never answered this question in the FIFRA context, the Court has concluded in the cigarette labeling context that "requirements" may not be based upon "smoking and health ... under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act". *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Following remand based upon *Cipollone,* the Eleventh Circuit held that state common law claims for negligence and strict liability that require a showing that labeling or packaging caused an injury are preempted by FIFRA because the term "requirements" in 7 U.S.C. § 136v(b) includes state common law claims. *Papas v. Upjohn Company,* 985 F.2d 516, 520 (11th Cir. 1993), *cert. denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248. However, claims that do not challenge the labeling and packaging are not preempted. *Id.* The plaintiff in *Papas* had conceded that each of their claims alleges in part that defendant had failed to warn users of the harmful chemicals and to take precautionary measures. Plaintiff in this case argues that he has made no such concession, and that claims that the pesticide is unreasonably dangerous regardless of labeling are not preempted.

Plaintiff principally relies upon the 1996 United States Supreme Court case of *Medtronic v. Lohr,* in which a 5–4 decision (with the fifth vote provided in a concurring opinion by Justice Breyer) concluded that in the Medical Device Act ("MDA"), the term "requirements" in the preemption section did *not* preclude all state common law damages actions. 518 U.S. 470, 489, 116 S.Ct. 2240, 2252, 135 L.Ed.2d 700 (1996). The majority held that because the word "requirement" in the MDA was used often in that statute it had more specific meaning than when used in the Cigarette Labeling Act. Both the plurality and the concurring opinion concluded that due to a Food & Drug Administration regulatory scheme defining preemption as involving "specific" requirements as to a device, the state personal injury action could proceed. *Medtronic,* 518 U.S. at 494–500, 505–507, 116 S.Ct. 2254–58, 2260–61.[6]

Plaintiff argues that if the Eleventh Circuit analyzed FIFRA preemption today, it would follow the Supreme Court's analysis in *Medtronic,* retreat from *Papas,* and conclude that Plaintiff's failure to warn claims are not preempted.

While Plaintiff may be correct, and the issue is a close one, this Court is bound to follow the Eleventh Circuit law as it remains today.[7] The *Medtronic* opinion is now six years old, the *Papas* opinion is now nine years old, yet *Papas* has not been retreated from nor overruled. The Court notes that several other courts that have considered the issue have found for Defendants. In particular, the California Supreme Court, albeit in a four to three decision, addressed the exact same argu-

---

6. The four justice plurality opinion also concluded that Congress could not have intended to preempt all state tort claims in the absence of a federal remedy under the MDA, without explicitly stating such preemption. *Medtronic,* 518 U.S. at 487, 116 S.Ct. at 2251. Even in *Cipollone,* not all state law claims were ruled preempted.

7. Just as the Eighth Circuit was bound to follow its precedent regarding FIFRA preemption in *Netland v. Hess and Clark,* 284 F.3d 895, 899 (8th Cir.2002), *cert. filed* August 9, 2002.

ments made by Plaintiff. In its decision, it reviewed case law from many federal circuit courts regarding FIFRA preemption. See *Etcheverry v. Tri–Ag Service, Inc.,* 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366, 373–74 (2000). The California Supreme Court concluded that the MDA is distinguishable from the Cigarette Labeling Act and FIFRA because the MDA "gave the FDA a unique role in determining the scope of preemption under the MDA." *Id.* at 373. The California Court also addressed the argument, supported by an amicus brief by the United States, that the Environmental Protection Agency has specifically disavowed regulated issues of pesticide efficacy, and "concerns itself only with whether a pesticide would have unreasonably adverse effects on human health or the natural environment," but not "whether it will control the target pest or harm the crop it was intended to protect." *Id.* at 374. The plaintiffs in *Etcheverry* were suing for crop damage, and not personal injury. Thus, even under the United States' view as presented to the California Supreme Court, personal injury claims for failure to warn would be preempted.[8]

■ Though *Papas* preempts failure to warn claims, or any claim based upon labeling or packaging requirement, *Papas* does not hold that all state law claims are preempted. State tort claims that do not involve labeling or packaging are not preempted. 985 F.2d at 520. Plaintiff may bring claims for strict liability and negligence for design defect or manufacturing defect for manufacture of a product that is unreasonably dangerous, provided that the issue of warning to consumers is not implicated: Plaintiff may not bring an

inadequate warning or failure to warn claim under a strict liability or negligence theory. *National Bank of Commerce v. Dow,* 165 F.3d 602, 608 (8th Cir.1999).

### C. Design Defect Claims

#### 1. Strict Liability

■ Defendants argue that the issue of warning is implicated in Plaintiff's remaining theories of liability, providing an additional reason for preemption because Florida state law looks to consumer expectations or a risk-benefit test to analyze strict liability claims. See *Jennings,* 181 F.3d at 1255. Defendants argue that any Florida jury considering strict liability under either test would necessarily need to determine, under an objective test, whether the label or package warnings were reasonable to an ordinary consumer. *Id.* Though there is no direct Florida state law case discussing FIFRA or similar preemption as to this kind of product liability theory, Defendants do cite to several other jurisdictions, including other federal trial courts, that have agreed with Defendants. See Pages 18–27 of Dow Defendants' Brief in Support of Motion for Summary Judgment [DE 67]. This Court agrees. The Eleventh Circuit in *Jennings* states that Florida law requires a jury to consider "the perspective of an 'ordinary consumer' or the 'normal public expectation'" of the danger. 181 F.3d at 1255. The objective expectation of the public regarding the dangerousness of a product necessarily involves consideration of the warning given to the public. Therefore, such design defect claims that Plaintiff brings under Florida law as to Dursban, a product regulated under FIFRA by the

---

**8.** The California Supreme Court rejected the United States' view and concluded that even

claims for crop damage based upon a failure to warn theory were preempted.

federal government, are preempted. But see *Jeffers v. Wal–Mart,* 171 F.Supp.2d 617, 622–25 (S.D.W.Va.2001); *In re Star-Link,* 212 F.Supp.2d 828, 836–37 (N.D.Ill. 2002).

### 2. Negligence

With regard to a negligence claim for any design defect, Plaintiff argues that separate from any failure to warn issues, that Defendants could be liable for designing and manufacturing an unreasonably dangerous product, and, because FIFRA does not preempt Florida state law from banning a product outright, Defendants may be liable for tort damage claims. Since FIFRA precludes Plaintiff from bringing a case seeking changes to labeling, the only claim left for Plaintiff to make is that because Florida could ban Dursban outright, a common law claim based upon defective design of an unreasonably dangerous product is not preempted. Such claim, however, suggests that a manufacture would have to not produce Dursban at all to avoid liability (or at least not sell it in Florida), since extra warnings to people such as Plaintiff with chemical sensitivity are not allowed under state law. The Eleventh Circuit statement that "Decisions of the Florida courts demonstrate that a maker or seller of a product need not go to extreme lengths to protect foreseeable users of its products" precludes just such a claim. 181 F.3d at 1257.

### D. Manufacturing Defect Claims

Florida law recognizes a strict liability action for a manufacturing defect, in addition to a negligence cause of action. See *McCorvey v. Baxter Healthcare Corp.,* 2002 WL 1669832 (11th Cir. July 24, 2002);

*Warren v. K–Mart Corp.,* 765 So.2d 235, 237 (Fla. 1st DCA 2000) (quoting Restatement (Third) of Torts that "a product contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product.") Such claims are not preempted by FIFRA. *Nat'l Bank of Commerce,* 165 F.3d at 609; *Worm v. American Cyanamid Co.,* 5 F.3d 744, 749 (4th Cir.1993). Defendants argue that the evidence they have submitted regarding quality control in the Dursban manufacturing process irrefutably rebuts any claim of negligence or strict liability by Plaintiff. See Declaration of Michael Meath, Exhibit B to Dow Defendants' Motion for Summary Judgment [DE 65]. This Court agrees. There is no evidence that the Dow product has departed from its intended design.[9]

Though Plaintiff argues in response that he has not had an opportunity to discover facts to support more than an inference of the manufacturing defect claims, Plaintiff has had over nine months to discover such facts. Other than the above one-sentence argument in the conclusion section of his opposition to the Dow Defendants' motion for summary judgment, Plaintiff has not provided sufficient reasons to met the standard of Rule 56(f) of the Federal Rules of Civil Procedure to obtain a continuance of the summary judgment motion. See *Nat'l Bank of Commerce,* 165 F.3d at 606; *Worm,* 5 F.3d at 749. Therefore, the Court will grant Defendants' Motion for Summary Judgment in its entirety, on grounds of preemption as to claims for failure to warn and design defect, and as a matter of law that no genuine issue of material fact exists as a manufacturing defect.

**9.** See below for discussion of Affidavit of Mohamed Bahie Abou–Donia.

### E. Motions to Strike

■ The Court denies Defendants' motion to strike the affidavit of Dr. Mohamed Bahie Abou–Donia, on the grounds that given FIFRA preemption and Florida law as described above, even if everything Dr. Abou–Donia says is true, and the Court must assume so for purposes of a motion for summary judgment, Defendants' motion for summary judgment must be granted. Though Dr. Abou–Donia's affidavit attempts to state that there is a design defect in the Dursban product,[10] there is no duty in Florida to stop selling or manufacturing a product that might be dangerous to a small segment of the population, in the context of a federal regulatory scheme allowing such sale or manufacture and in which the federal scheme forbids states from expanding warning labels approved by the federal government. See above discussion and *Jennings v. Bic Corporation, supra.* Thus, without deciding issues of *Daubert* admissibility as to Dr. Abou–Donia affidavit, the Court denies the motion to strike his affidavit as moot.

Defendants also moved to strike Plaintiff's affidavit, medical record, answer to interrogatory number 13, and the affidavit of Richard Hosford. Again, the Court concludes that all of this evidence, even if true, does not affect the Court's conclusions made as a matter of law. The motion to strike is therefore denied as moot.

### II. CONCLUSION

The motions concerning scheduling and disclosure of experts are decided below. Basically, the Court grants on a *nunc pro tunc* basis Plaintiff's motion for extension

of time to disclose experts. The discovery ruling Plaintiff was waiting for was issued March 25, 2002. The Court has not stricken any experts put forth by Plaintiff. As to Plaintiff's motion for a new scheduling order, the Court will deny this motion. There has been plenty of time for discovery, even taking into account the discovery motion practice that has occurred.

As to the remaining defendants, the Court notes that Home Depot's Motion for Summary Judgment was just recently filed. As far as the Court can tell from the docket, Defendants Monsanto, Solaris and Scotts have not filed or joined a motion for summary judgment, though the deadline has not yet occurred. Any future such motion should indicate whether those defendants stand in the same position, factually and legally, as the Dow Defendants.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Dow Defendants' Motion for Summary Judgment [DE 65] is hereby **GRANTED** as to all claims against those Defendants;

2. Plaintiff's Motion for Extension of Time to Disclose Experts [DE 32] is hereby **GRANTED**, *nunc pro tunc* to 30 days after the Scotts Company's response to Judge Johnson's March 25, 2002 Order compelling in part certain discovery;

3. Dow Defendants' Cross Motion to Bar Plaintiff's Use of Undisclosed Expert Testimony [DE 35–2] is hereby **DENIED as moot;**

4. Plaintiff's Motion for Scheduling Conference [DE 42–1] and for New

---

**10.** See ¶ 14, Affidavit of Mohamed Bahie Abou–Donia, Plaintiff's Notice of Filing, DE 79.

Scheduling Order [DE 42–2] is hereby **DENIED**;

5. Dow Defendants' Cross Motion for Extension of Time of Expert Discovery Deadline [DE 55–2] is hereby **DENIED as moot**;

6. Dow Defendants' Motions to Strike [DE 93 and 96] are hereby **DENIED as moot**.