816 So.2d 1133 (2002)
Maritza SCHEMAN-GONZALEZ, etc. et al., Appellants,
v.
SABER MANUFACTURING COMPANY; Titan International, Inc.; Michelin North America, Inc., etc., et al., Appellees.
Nos. 4D00-2317, 4D00-3853.
District Court of Appeal of Florida, Fourth District.
April 10, 2002.
Rehearing Denied June 5, 2002.
*1135 Robert S. Glazier and Sarah Helene Sharp of Law Office of Robert S. Glazier, Miami, and A. Francisco Areces, P.A., Coral Gables, for appellants.
G. William Bissett of Hardy & Bissett, P.A., Miami, for Appellee-Titan International, Inc.
*1136 Wendy F. Lumish and Jeffrey A. Cohen of Carlton Fields, P.A., Miami, for Appellee-Michelin North America, Inc.
STONE, J.
David Rodriguez suffered fatal injuries when he attempted to mount a 16 inch Michelin tire onto a 16.5 inch Saber-Titan wheel. The plaintiffs, referred to herein as "Gonzalez," appeal summary judgments entered against them in this wrongful death lawsuit against Titan International, Inc. ("Titan"), and Michelin North America, Inc. ("Michelin"). We reverse.
Titan designed and manufactured the wheel rim.[1] The multi-count complaint alleged that Titan was liable for the negligent design of the wheel and for failing to warn customers and users that the 16.5 inch wheel would accept a 16 inch tire, but would explode when it was mounted.[2] The complaint further alleged that these dangers were not apparent to, or known by, Rodriguez.
As to Michelin, it was alleged that Michelin negligently manufactured the subject tire and that it knew or should have known that the tire was defective and unreasonably dangerous.[3]
The grounds upon which Titan moved for summary judgment were that, as a component part manufacturer, it was not responsible for any defect in the wheel assembly and had no duty to warn endusers of potential dangers. Further, Rodriguez *1137 knew of the risk. Michelin adopted the grounds asserted in Titan's motion.
In granting summary judgment, the trial court considered several depositions which included testimony that Rodriguez was employed as a "helper" at an auto repair business and tire work was not his responsibility. However, there was also testimony that Rodriguez did help change tires after being taught to do so by Williams, his co-worker. Williams claimed to have warned Rodriguez he could injure himself if he mounted a tire on the wrong size of wheel. There was other testimony that Rodriguez was aware of this danger.
Michael Brock, the corporate officer of the employer, testified that Rodriguez was not charged with changing tires and was only responsible for stacking the tires and cleaning up. Brock acknowledged, however, that Rodriguez may have used the tire changing machine without his knowledge. In fact, Chris Ellison, a former manager, confirmed that he had witnessed Rodriguez changing tires on occasion.
The record reflects that Saber Manufacturing Company manufactured the wheel and that Titan supplied the rims. A former Saber operations manager stated that Saber began putting a warning label on the 16.5 inch rims regarding mismatch problems with 16 inch tires, but was unable to recall exactly when this practice began, only that it was probably instituted before the wheel in question was manufactured. He also stated that the tire manufacturers generally place a warning on the tire regarding the dangers of mounting the 16 inch tire on a 16.5 inch wheel.
Titan filed the affidavit of Michael Borrelli, a private investigator, who stated that he had inspected the wheel in question and was able to read the markings, including the 16.5 inch size in at least three places on the wheel. He was also able to clearly observe a marking on both the inboard and outboard sidewalls of the tire, which stated, "MOUNT ONLY ON APPROVED 16 INCH RIMS."
Gonzalez filed the affidavits of two experts in opposition to the motions for summary judgment.
According to Laughery, one of the experts, the similarity of the two wheels in size and appearance causes tire busters to rely on negative feedback as an indication that the tire they are mounting is not the correct size. However, in the case of the 16.5 inch wheel and 16 inch tire, because there is often no difficulty in placing the 16 inch tire on the 16.5 inch rim, there may be no "feedback" to indicate a mismatch.
Laughery stated that studies show the 16 inch tire has a 5-degree bead contour and the 16.5 tire has a 15-degree bead contour. As a result, a 16 inch tire placed on a 16.5 inch rim will not seat properly and will explode when inflated. However, the flange of the rim is virtually the same diameter for the 16 and 16.5 inch rim. Hence, "the task of placing a 16 inch tire on a 16.5 inch rim is no more or less difficult than on a 16 inch rim."
Laughery concluded that the markings involved in this case were insufficient to warn tire mounters of the danger of mounting a 16 inch tire onto a 16.5 inch wheel. The study used by Laughery also concluded that limited warning labels, informing the user to match the tire and wheel size, even if they warned of the risk of serious injury, were inadequate. The only label he viewed as adequate was one that specifically explained that a 16 inch tire could be easily passed over the 16.5 inch rim flange but will not seat and will explode on inflation.
Gonzalez's second expert, Milner, testified that design defects in the Saber/Titan 16.5 inch wheel and the bead in the Michelin 16 inch tire caused the explosion which *1138 killed Rodriguez. Milner also confirmed that the 16 inch tire will initially be accepted onto the 16.5 inch rim, but will not seat and will eventually explode. He further noted that the 16.5 inch wheel is the only passenger or light truck wheel in the United States that is capable of accepting a tire which does not match its size.
Milner concluded that the subject rim is defective because it is configured to accept the 16 inch tire readily and this rim design violates the principle that if the wheel accepts the tire, it is the appropriate size. He also stated that the size markings on the tire and rim are inconspicuous and are inadequate to warn tire mounters of the danger of a mismatch. He further concluded that defective design and lack of proper warnings caused the fatal injuries.
Milner also referred to conclusions that the 16.5 inch rim could easily be re-designed to eliminate the hazard of inadvertent mismatches and that the design of the tire could be modified to use an alternative almost fail-proof bead grommet design which would have prevented the subject accident. We note, however, Milner cautioned that strengthening the tire bead grommets might otherwise compromise the integrity of the tire.
In light of the aforementioned evidence, the trial court entered summary judgment against Gonzalez. The court found that as a component part manufacturer of a part which was not inherently dangerous, Titan owed no duty to warn end users of the dangers of the wheel subsequently assembled by Saber. The court found there was no genuine issue of material fact as to whether Rodriguez knew of the importance of matching tire and wheel sizes and the dangers in mismatching tires and wheels. Therefore, Titan had no duty to warn Rodriguez, who was aware of the danger.
The court also found that none of the evidence was sufficient to show that a lack of warning regarding mismatching the 16 inch tire with the 16.5 inch rim caused Rodriguez's injuries and death. Further, the court found that there could be "no showing of proximate causation where an experienced mechanic read and did not heed the warnings while attempting to inflate a 16 inch tire on a 16.5 inch wheel."
Of significance to the trial court was the absence of eyewitnesses to the explosion who could testify as to how the accident occurred. From these facts, the court concluded that Rodriguez's negligence alone was the legal cause of the injuries. Further, the court found that Laughery's affidavit regarding the adequacy of warnings could not withstand the Frye[4] test and would be inadmissible at trial. Although the court ruled Milner's testimony with respect to the defective wheel and rim design admissible under the Frye test, it found that, as an expert in engineering, Milner was not qualified to testify regarding the adequacy of warnings and, as such, that portion of his testimony was inadmissible.
As to Michelin, the order repeated the finding that there could be no showing of proximate causation where Rodriguez did not heed the warnings. The trial judge reiterated his findings regarding the inadmissibility of Laughery's testimony. With regard to Milner's testimony, the trial judge found that his testimony as to the bead grommet design satisfied the Frye test but would be inadmissible because his opinion was merely conclusory, speculative and not supported by portions of the studies submitted as part of Milner's affidavit. The trial judge further found, as he had in *1139 the Titan order, that the testimony regarding the adequacy of the warnings would be inadmissible as beyond Milner's expertise.
Initially, we note that, regardless of whether portions of the testimony of Laughery and Milner may ultimately be excluded, there is no reason to exclude the factual background testimony regarding the 16/16.5 inch tire/rim mismatch phenomenon, a fact which is also discussed in several reported and unreported cases. See, e.g., Richards v. Michelin Tire Corp., 21 F.3d 1048 (11th Cir.1994); Shepherd v. Michelin Tire Corp., 6 F.Supp.2d 1307 (N.D.Ala.1997); Freitas v. Michelin Tire Corp., No. CIV.3:94CV1812(DJS) (D.Conn. March 2, 2000).
The trial court erred in granting summary judgment in this case. Summary judgments should be granted with caution in negligence cases. Moore v. Morris, 475 So.2d 666, 668 (Fla.1985); Holl v. Talcott, 191 So.2d 40, 46 (Fla.1966). As such, where evidence is conflicting, raises any issue of material fact, or permits different reasonable inferences, summary judgment should be denied. See id.
We conclude that Michelin and Titan have failed to establish the absence of genuine issue of fact as to the need to warn and whether Rodriguez knew or should have known of the danger. Although there is testimony that Rodriguez knew of the dangers of mismatching tires and wheels, generally, there is no proof that he knew of the danger involved in attempting to mount a 16 inch tire onto a 16.5 inch rim or that the tire would be initially accepted onto the wheel but the beads would not seat. As such, there remains a significant question as to whether Rodriguez was aware of the particular danger involved.
Here, we deem the Restatement (Third) of Torts: Products Liability (1998), instructive. It states that a product is defective in design "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design" and its omission "renders the product not reasonably safe." Id. at § 2(b). Additionally, a product is considered defective "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings" and their omission "renders the product not reasonably safe." Id. at § 2(c); see also Warren v. K-Mart Corp., 765 So.2d 235, 237-38 (Fla. 1st DCA 2000).
Unless the danger is obvious or known, a manufacturer has a duty to warn where its product is inherently dangerous or has dangerous propensities. Am. Cyanamid Co. v. Roy, 466 So.2d 1079, 1082 (Fla. 4th DCA 1984); Brito v. County of Palm Beach, 753 So.2d 109, 112 (Fla. 4th DCA 1998); see, e.g., Cohen v. Gen. Motors Corp., Cadillac Div., 427 So.2d 389, 391 (Fla. 4th DCA 1983); Perez v. Nat'l Presto Indus., Inc., 431 So.2d 667, 669 (Fla. 3d DCA 1983).
This court has recognized that, "[t]o warn adequately, the product label must make apparent the potential harmful consequences. The warning should be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." American Cyanamid, 466 So.2d at 1082. In addition, "[a] warning should contain some wording directed to the significant dangers arising from failure to use the product in the prescribed manner, such as the risk of serious injury or death." Brito, 753 So.2d at 112. Furthermore, as is the case when considering whether the injured party knew of the danger, the sufficiency and reasonableness of a manufacturer's *1140 warnings are questions of fact which are best left to the jury unless the warnings are accurate, clear, and unambiguous. Id.; see also Salozzo v. Wagner Spray Tech. Corp., 578 So.2d 393, 394 (Fla. 3d DCA 1991); Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 701 (1st Cir.1988); see generally Vega v. City of Pompano Beach, 551 So.2d 594 (Fla. 4th DCA 1989).
In Brito, we concluded that the suggestion that only a qualified person install the wheel was merely an instruction, rather than a warning because it failed to inform consumers of the possible risk of death occurring with certain tire and wheel combinations. 753 So.2d at 112; see also Brown v. Glade and Grove Supply, Inc., 647 So.2d 1033, 1035-36 (Fla. 4th DCA 1994)("advising a user to operate a tractor with the lock-out pins in place is an instruction, not a warning"). Similarly, in this case, the warning on the tire instructed the user to mount a 16 inch tire only on a 16 inch rim but gave no hint as to the possibility of serious injury or death or of the particular hazard regarding the 16 inch tire/ 16.5 inch rim mismatch. As the adequacy of the tire warning must be left to the jury, it follows that the sufficiency of the wheel/rim label, which included only size markings, must be similarly resolved.
An issue of fact also remains as to proximate cause; whether Rodriguez's injuries were more likely than not caused by the conduct of one or both defendants. In Brito, this court, having found that the manufacturer's duty to warn and the adequacy of the warning were questions for the jury, noted that the question of proximate cause is also for the jury unless the facts are "so clear that reasonable people could not differ." 753 So.2d at 113. In Brito, the court noted that while the evidence strongly suggested that no warning would have stopped the decedent from placing the dangerous wheels on his Jeep, an issue of fact remained as to the failure to warn claim and, as such, the plaintiff was entitled to present the jury with that possibility. Id. Similarly, in this case, even if Gonzalez cannot prove that better warnings would have been noticed, read, or obeyed by Rodriguez, they were entitled to have the jury consider the possibility that the warning was inadequate to inform Rodriguez of the particular danger.
We further note that the only fair inference in this case is that Rodriguez was fatally injured in an explosion when he attempted to mount a 16 inch tire on a 16.5 inch wheel and that such a mismatch can cause an explosion. Therefore, viewing the evidence in a light most favorable to Gonzalez, there is evidence that the tire/wheel mismatch caused the injury. We have considered Wong v. Crown Equipment Corp., 676 So.2d 981 (Fla. 3d DCA 1996), and Adkins v. Economy Engineering Co., 495 So.2d 247 (Fla. 2d DCA 1986), and deem them distinguishable, as in each there was, in fact, no evidence of the cause of injury.
Rodriguez's own negligence is, if any, a matter of comparative negligence. We recognize that on appropriate facts, a trial court may determine that the plaintiff's negligence was the sole cause of his or her own injury. See Standard Havens Prods., Inc. v. Benitez, 648 So.2d 1192 (Fla.1994); see also; Lopez v. Southern Coatings, Inc., 580 So.2d 864 (Fla. 3d DCA 1991); Ashby Div. of Consol. Aluminum Corp. v. Dobkin, 458 So.2d 335 (Fla. 3d DCA 1984). However, still unresolved is the issue that Rodriguez may have assumed he had a match if the tire was initially accepted onto the wheel, the exact danger claimed in the complaint. Therefore, even if Rodriguez was negligent, a question of fact remains as to whether that failure was the sole proximate cause of his injuries.
*1141 Further, while no one actually witnessed the explosion in this case, there were eyewitnesses to Rodriguez's actions immediately prior thereto, such that the cause of the explosion could be reasonably inferred. A summary judgment is not required simply because a plaintiff lacks eyewitnesses to an accident. See Javits v. RSMO Independence Mgmt. Consultants, Inc., 738 So.2d 521, 522 (Fla. 4th DCA 1999); Bianchi v. Garber, 528 So.2d 969, 970 (Fla. 4th DCA 1988). Thus, the trial court's reliance on this fact is misplaced.
We conclude that there are questions of fact as to whether Michelin and Titan were required to warn Rodriguez of this particular danger, whether the warning that existed was adequate to apprise him of the danger, and whether the lack of adequate warning proximately caused Rodriguez's fatal injuries.
There is also a genuine issue of fact regarding the design defect claim against Michelin. The trial court did not consider Milner's opinion of the design defect, apparently because it recognized contrary views expressed in a study attached to his affidavit. However, the record reflects that Milner did not rely on that study as support for his conclusions regarding the tire bead grommet design defect and, as such, his testimony on that point may be admissible.
With respect to Titan, as manufacturer of only a component part of the wheel, we note that liability of a component part manufacturer for a defective product is recognized under some circumstances. See Favors v. Firestone, 309 So.2d 69, 71 (Fla. 4th DCA 1975).
Although the supplier of component parts is not liable where it is simply following plans and specifications, a supplier may be subject to liability for injury caused by a product into which the component is integrated where:
(a) [t]he component is defective in itself... and the defect causes harm; or
(b) (1) [t]he seller or distributor of the component substantially participates in the integration of the component into the design of the product; and
(2) [t]he integration of the component causes the product to be defective ...; and
(3) [t]he defect in the product causes the harm.
Restatement (Third) of Torts: Products Liability § 5 p. 140 (1997).
Accordingly, Titan, as a component part manufacturer, could be responsible if its rim was itself defective, or if the allegedly defective rim was essentially unchanged when integrated into the final unit. In light of Milner's testimony, there is a genuine issue of fact as to the defective nature of the rim.
We recognize that where a product is reasonably safe, the fact that there may be a better alternative design is not grounds for product liability. See Husky Indus., Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983). However, while a manufacturer has no duty to make a product accident proof, see id., users are still protected, under the restatement reasoning, from products "fraught with unexpected dangers." Royal v. Black & Decker Mfg., Co., 205 So.2d 307 (Fla. 3d DCA 1967); Mendez v. Honda Motor Co., 738 F.Supp. 481 (S.D.Fla.1990). There also appears to be a disputed fact question as to whether the rim was altered in any fashion when incorporated into the wheel.
Considering the issues in favor of Gonzalez, as is required, we reverse and remand for further proceedings. We deem all other issues raised to be Frye issues *1142 which remain to be addressed at the time of trial.
FARMER and HAZOURI, JJ., concur.
NOTES
[1] The rim, and a component disc within the rim manufactured by a third party, Saber, are collectively referred to throughout the proceedings as the "subject wheel."
[2] Gonzalez charged Titan with:

a. negligent design consisting of inadequate markings to distinguish the 16.5 inch wheel from a 16 inch wheel such that "a reasonable user would recognize the size of the wheel...."
b. negligent design consisting of failure to include warnings as to the danger of mismatching the wheel with 16 inch tires.
c. negligent design in that the 16.5 inch wheel readily accepts the 16 inch tire but is likely to explode on inflation because it cannot be properly seated on the wheel; furthermore, the absence of adequate warning compounds the danger.
d. negligent design of the 16.5 inch wheel similar to a 16 inch wheel which similarity "lure[s]" reasonable users into thinking that the proper wheel is in use when the 16.5 inch wheel accepts the 16 inch tire.
e. failure to warn customers and users that the wheel readily accepts a 16 inch tire and the dangers, including explosion of the tire, when mounting the smaller tire on the wheel.
f. failure to warn of the danger of removing the tire and wheel assembly from the tire changer while the tire is not fully inflated.
[3] Gonzalez charged Michelin with:

a. negligent design consisting of inadequate markings to distinguish the 16 inch tire from other tires, including a 16.5 inch tire such that "a reasonable user would recognize the size of the tire...."
b. negligent design consisting of failure to include warnings as to the danger of mismatching the tire with a 16.5 inch wheel.
c. negligent design in that the 16 inch tire can be readily mounted on and accepted by a 16.5 inch wheel but is likely to explode on inflation because the tire cannot be properly seated on the wheel; furthermore, the absence of adequate warning compounds the danger.
d. negligent design of the 16 inch tire similar to a 16.5 inch tire which similarity "lure[s]" reasonable users into thinking that the proper tire is in use when the 16.5 inch wheel accepts the 16 inch tire.
e. negligent design and manufacture of the tire bead which fails at pressures below the rated tire pressures.
f. failure to warn customers and users that the tire readily accepts a 16.5 inch wheel and the dangers, including explosion of the tire, when mounting the smaller tire on the wheel.
g. failure to warn of the danger of removing the tire and wheel assembly from the tire changer while the tire is not fully inflated.
[4] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).