Sylvia PINCHINAT, as personal
representative of the Estate of
Ashantie Pinchinat, Plaintiff,

v.

GRACO CHILDREN'S PRODUCTS,
INC., a foreign corporation,
Defendant.

No. 204CV252FTM29SPC.

United States District Court,
M.D. Florida,
Fort Myers Division.

April 7, 2005.

Gregg M. Hollander, Boca Raton, FL, for Plaintiff.

Hughes Hamilton Rice, III, William B. Bowles, Jr., Tampa, FL, and Joseph J. Krasovec, III, Chicago, IL, for Defendant.

## OPINION AND ORDER

STEELE, District Judge.

This matter comes before the Court on defendant Graco Children's Products, Inc.'s Motion for Summary Judgment (Doc. # 41) filed on February 18, 2005. Plaintiff Sylva Pinchinat filed her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. # 51) on March 14, 2005. The parties submitted an affidavit, depositions, and other materials in support of their respective briefs. The action arises from the accidental asphyxiation death of a six month old infant, Ashantie Pinchinat (hereafter Ashantie), who had been sleeping in a stroller manufactured by defendant Graco Children's Products, Inc. (hereafter defendant or Graco Products).

### I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1259–60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir.2003).

## II.

Viewing the facts in the light most favorable to plaintiff, the Court finds the following summary judgment facts: In 2002 plaintiff Sylvia Pinchinat (hereafter plaintiff or Pinchinat) purchased a stroller in Naples, Florida which had been manufactured by Graco Products. While assembling the stroller, plaintiff referred to portions of the owner's manual which accompanied the stroller, but did not read the entire owner's manual. The owner's manual was in English, French, and Spanish; plaintiff understands English and French, and received a high school diploma.

A portion of the owner's manual described the pop-up enclosure feature of the stroller. The pop-up enclosure is a piece of fabric the user manually releases from underneath the seat and which covers the leg openings using thread straps fastened by Velcro contained on the ends of the straps. The pop-up enclosure secures the leg openings at the front of the stroller and prevents a child from slipping out of the stroller through the leg openings. The pop-up enclosure must be manually attached to the stroller seat. Plaintiff saw the section of the owner's manual where the pop-up enclosure was addressed, but did not read the section.

The owner's manual provided several warnings in English, French, and Spanish on pages two through seven—immediately following the cover page. The English version of the pertinent warnings were as follows:

### ! WARNING

Failure to follow these warnings and the assembly instructions could result in serious injury or death.

**NEVER LEAVE CHILD UNATTENDED.** Always keep child in view while in stroller.

**AVOID SERIOUS INJURY** from falling or sliding out. Always use seat belt. After fastening buckles, adjust belts to get a snug fit around your child.

**CHILD MAY SLIP INTO LEG OPENINGS AND STRANGLE.** Never use in full recline position unless pop-up enclosure is up. Do not use pop-up enclosure with an older child that can lift up on hands and knees or crawl out.

(Doc. # 41, Exh. 2, at 2 (emphasis in original)).

**USING GRACO INFANT CARRIER WITH STROLLER:**

**READ THE MANUAL** provided with your Graco carrier before using it with your stroller.

**ALWAYS SECURE** your child with the carrier harness when using the carrier in the stroller. If your child is already in the carrier, check that the child is secured with the harness.

(Doc. # 41, Exh. 2, at 3 (emphasis in original)).

In addition to the warnings contained within the owner's manual, the on-product label sewn directly onto the stroller seat stated as follows:

!WARNING

**Avoid serious injury or death:**

● Never leave child unattended.

● To avoid serious injury from falling or sliding out, always use seat belt when pop-up enclosure is not in use.

Child may slip into leg openings and strangle. Never use seat in a reclined carriage position unless pop-up enclosure is raised to cover the front opening.

**BUCKLE UP TO PREVENT INJURIES**

(Doc. # 41, Exh. 3 (emphasis in original)). The on-product warnings also were in English, French and Spanish. Plaintiff saw the label on the stroller seat before the incident, but she did not read the contents of the label.

On April 8, 2003, plaintiff and Ashantie attended a party at a friend's apartment. While at the party, plaintiff placed Ashantie in the stroller, which was in a fully reclined position for the first time, and placed the stroller and infant in a bedroom outside her view while at the party. Because Ashantie was resting on her side, plaintiff decided not to use the seat restraints. Plaintiff also did not use the pop-up enclosure as instructed in the owner's manual and the on-product warning.

Plaintiff checked on Ashantie twice during the course of the evening. Ten minutes after placing Ashantie in the bedroom, plaintiff checked to determine whether Ashantie was asleep. Satisfied that Ashantie was asleep, plaintiff returned to the living room and re-joined the party. When plaintiff returned to the bedroom to again check on Ashantie, Plaintiff discovered a portion of Ashantie's body had slid through the leg openings, trapping her head between the tray and stroller seat and strangling her. Ashantie was not breathing.

When emergency medical personnel arrived at the apartment, they were able to revive Ashantie, and she was then transported to the hospital. Ashantie remained on life support for approximately a month. After it was determined that Ashantie suffered severe brain damage, a decision was made to remove Ashantie from life support, and she died soon thereafter.

Deputy chief medical examiner Dr. Manfred C. Borges, Jr. conducted the autopsy and determined the cause of death was mechanical asphyxia. (Doc. # 69, Exh. 1.) The injury had occurred when Ashantie's head was lodged between the front tray and the stroller seat. (*Id.*) Dr. Borges ruled the death to be an accident. (*Id.*)

Plaintiff, as the personal representative of the estate of Ashantie Pinchinat, filed a two-count complaint in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida. Count I alleges strict liability, and alleges that the stroller was defective and unreasonably dangerous at the time of its design, manufacture, assembly, distribution and sale in that (a) the stroller failed to contain sufficient warnings of the hazard that infants' bodies can slide through the opening between the child's tray and front edge of the seat and become trapped by the head and strangled to death, and (b) failed to restrain infants who were left to sleep in the stroller with the backrest reclined to the carriage position so that they could not move (wiggle), feet first towards the front of the stroller, and when their bodies pass through the opening between the child's tray and front edge of the seat become entrapped by the head and strangled to death. Count II alleges a negligence claim involving the same alleged defects. Defendant removed the action to federal court based upon

diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

### III.

 In *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla.1976) the Florida Supreme Court adopted the strict product liability standard of the American Law Institute Restatement (Second) of Torts, § 402A.[1] *Jennings v. BIC Corporation*, 181 F.3d 1250, 1255 (11th Cir.1999). Strict liability in Florida includes three distinct components. "[A] product may be defective by virtue of a design defect, a manufacturing defect, or an inadequate warning." *Jennings*, 181 F.3d at 1255, quoting *Ferayorni v. Hyundai Motor Company*, 711 So.2d 1167, 1170 (Fla. 4th DCA 1998). Plaintiff's strict product liability claim is premised on two theories of liability, the failure to include proper warnings and the failure to properly design the stroller. The Court addresses each separately.

### A. Failure to Warn:

 "Unless the danger is obvious or known, a manufacturer has a duty to warn where its product is inherently dangerous or has dangerous propensities." *Scheman–Gonzalez v. Saber Mfg. Co.*, 816 So.2d 1133, 1139 (Fla. 4th DCA 2002). To establish strict liability for failure to warn, plaintiff must prove that defendant (a) is a manufacturer or distributor of the product at issue, and (b) did not adequately warn of a particular risk that was known or knowable in light of the generally recog-

nized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution. *Ferayorni*, 711 So.2d at 1172. "To warn adequately, the product label must make apparent the potential harmful consequences. The warning should be of such intensity as to cause a reasonable man to exercise his own safety caution commensurate with the potential danger." *Scheman–Gonzalez*, 816 So.2d at 1139 (citing *American Cyanamid Co. v. Roy*, 466 So.2d 1079, 1082 (Fla. 4th DCA 1984). Additionally, "[a] warning should contain some wording directed to the significant dangers arising from failure to use the product in the prescribed manner, such as the risk of serious injury or death." *Id.* The sufficiency and reasonableness of the warnings are questions of fact best left for the jury unless the warnings are accurate, clear, and unambiguous. *Scheman–Gonzalez*, 816 So.2d at 1139–40.

 Defendant contends that it satisfied the duty to adequately warn plaintiff of the dangers to Ashantie with its accurate, clear and unambiguous warnings. Defendant also urges the Court to follow *Lopez v. Southern Coatings, Inc.*, which held that plaintiff's admission that he failed to read the warning precluded him from challenging the adequacy of the warning or from claiming that the allegedly inadequate warning proximately caused plaintiff any damage. 580 So.2d 864, 865 (Fla. 3d DCA 1991).

1. The American Law Institute Restatement (Second) of Torts, § 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability or physical harm thereby caused to the ultimate user or consumer, or to his property if
(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the suer or consumer has not bought the product from or entered into any contractual relation with the seller.
336 So.2d at 84.

Plaintiff takes issue with the adequacy of the warning. She argues that none of the warnings, and specifically the pop-up enclosure warning, sufficiently conveyed the dangers to Ashantie. In addition, Plaintiff claims that any issue relating to the adequacy of the warning is a fact question for the jury. Plaintiff relies on *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.,* and argues that defendant was required to include universal symbols or pictures with the warnings in the manual and on the product label. 784 F.Supp. 1570 (S.D.Fla.1992). Plaintiff argues that the lack of visual aids is evidence that the warnings were inadequate, and the jury should resolve this factual dispute.

The Court finds that even when the evidence is viewed in the light most favorable to plaintiff there are no material factual disputes and defendant is entitled to judgment as to the failure to warn strict liability claim. The warnings in both the owner's manual and on the stroller were accurate, clear and unambiguous. The warnings advised consumers in plain language of the dangers and the potentially tragic consequences of failure to use the stroller properly, both generally (**"Failure to follow these warnings ... could result in serious injury or death"**) and specifically (**"CHILD MAY SLIP INTO LEG OPENINGS AND STRANGLE"**). The warnings gave specific instructions: **"NEVER LEAVE CHILD UNATTENDED.** Always keep child in view while in stroller;" "Always use seat belt;" "Never use in full recline position unless pop-up enclosure is up;" "To avoid serious injury from falling or sliding out, always use seat belt when pop-up enclosure is not in use;" and "Child may slip into leg openings and strangle. Never use seat in a reclined carriage position unless pop-up enclosure is raised to cover the front opening." Despite these clear and unambiguous warnings, plaintiff did exactly what the warnings told her not to do.

The facts in *Stanley Indus., Inc.* were very different. The warnings were only in English, and no symbols or pictures accompanied the warnings; one of the consumers who purchased the product did not read or write English, and the other consumer could read words written on the English label but had difficulty understanding their meaning; and defendant targeted non-English speaking consumers, like the plaintiffs. Under these circumstances, the court concluded there were genuine issues of material fact with respect to the adequacy of the label. 784 F.Supp. at 1572–76. None of these facts exist in this case.

Here, defendant's accurate, clear, and unambiguous warnings were in English, French, and Spanish. Plaintiff understood two of these languages, English and French. Defendant placed the warnings in conspicuous locations in the owner's manual and on the product. Plaintiff admits having possession of and referring to the owner's manual and having seen the label on the product, and that she was able to read them had she chosen. The warnings in multiple languages were prominently placed at the beginning of the owner's manual. The pop-up enclosure section also had another warning regarding the hazard to the infant in the manual. Defendant used varying letter types and fonts to relay to the consumer the danger to a child. Finally, the warnings clearly state the hazardous results—serious injury or death—which could happen to the infant if such warnings were not followed. Plaintiff was not unable to read and understand the warnings, she simply chose to forego carefully reading the label or the owner's manual despite the bolded word "Warning" in multiple languages.

Even if the Court assumes that the warnings were inadequate and that there is a material factual dispute as to their

adequacy which precluded summary judgment, plaintiff could still not prevail. Under Florida law, plaintiff's failure to read the warning label extinguishes proximate cause in a failure to warn claim. *Lopez,* 580 So.2d at 865 ("Where the person to whom the manufacturer owed a duty to warn ... has not read the label, an inadequate warning cannot be the proximate cause of the plaintiff's injuries."); *Ashby Div. Of Consol. Aluminum v. Dobkin,* 458 So.2d 335, 337 (Fla. 3d DCA 1984) (where plaintiff did not read the warnings, "any failure to warn could not, as a matter of law, be the proximate cause of plaintiff's injuries."). Unlike *Stanley Industries,* there is no "critical distinction" in this case because the failure to provide additional warnings or universally accepted pictorial symbols did not cause plaintiff to be unable to read the warnings. 784 F.Supp. at 1574–75. Plaintiff admits that she could have read the warnings, but failed to do so. Therefore, no proximate cause can be established between the allegedly inadequate warning and the death of Ashantie. Summary judgment will be granted in favor of defendant as to the failure to warn portion of the strict products liability claim.

## B. Design Defect:

 Under Florida law, a strict product liability action based upon design defect requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury. *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir.2002). Florida courts apply the following two-pronged test to determine whether a plaintiff has established a defective design:

> First, a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary customer would expect when used in an intended or reasonably foreseeable manner.... Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design.

*Cassisi v. Maytag Co.,* 396 So.2d 1140, 1145 (Fla. 1st DCA 1981) (internal citations omitted). *See also Force v. Ford Motor Co.,* 879 So.2d 103, 106–08 (Fla. 5th DCA 2004). The defectiveness of a design is determined based on an objective standard, not from the viewpoint of any specific user. *Jennings,* 181 F.3d at 1255 (citing *Hobart Corp. v. Siegle,* 600 So.2d 503, 505 (Fla. 3d DCA 1992). The burden to show that a defective design exists is on the plaintiff. *Husky Indus., Inc. v. Black,* 434 So.2d 988, 991 (Fla. 4th DCA 1983) (citing *Ford Motor Co. v. Hill,* 404 So.2d 1049 (Fla.1981)). In determining whether this burden has been satisfied, the Court must observe two related and well-accepted propositions. "First, a manufacturer is not an insurer; and second, a manufacturer does not have to make a product accident proof." *Husky Indus., Inc.,* 434 So.2d at 991 (citations omitted). A manufacturer is not strictly liable for all injuries caused by its product, but is liable only when the product is used as intended. *High v. Westinghouse Elec. Corp.,* 610 So.2d 1259, 1262 (Fla.1992).

 Defendant claims plaintiff cannot establish the third and fourth elements. Defendant argues that the stroller was not defective and did not create an unreasonably dangerous condition because the manual pop-up enclosure was properly designed. Additionally, defendant argues that because plaintiff did not use the stroller as intended—failing to properly safe-

guard the fully reclined stroller with the pop-up enclosure and to secure Ashantie with the restraints—her misuse was the proximate cause of Ashantie's death.

Plaintiff counters that the manual pop-up enclosure renders the stroller defective and unreasonably dangerous. Plaintiff argues that other consumers use the stroller as she did, that defendant should have foreseen this type of use and designed out the hazard, and should have implemented alternative designs. Plaintiff further claims because there is a factual dispute as to whether a defective design exists, the question should go to the jury and summary judgment should be denied.

The Court concludes that plaintiff has identified sufficient record evidence in her response to the summary judgment motion to establish that there are sufficient issues of disputed material fact as to the design defect theory of her strict products liability claim. Therefore, the summary judgment motion will be denied as to this aspect of the claim.

## IV.

### A. Failure to Warn

■■■■■ Generally, plaintiff's negligence claims impose somewhat different standards for assessing liability than under the strict products liability theory. *Jennings*, 181 F.3d at 1256–57. Under Florida law, a manufacturer and distributor of a product have a duty to warn of the inherent dangers associated with a product when the product has dangerous propensities. *Advance Chem. Co. v. Harter*, 478 So.2d 444, 447 (Fla. 1st DCA 1985). A manufacturer must take reasonable precautions to avoid reasonably foreseeable injuries to the users of its products, and thereby assumes a duty to convey to the users of that product a fair and adequate warning of the dangerous potentialities of the products so that the user, by the exercise of reasonable care, will have fair and

adequate notice of the possible consequences of the product's use or misuse. *Humphreys v. General Motors Corp.*, 839 F.Supp. 822, 829–30 (N.D.Fla.1993) (citing *Johns–Manville Sales Corp. v. Janssens*, 463 So.2d 242, 248–49 (Fla. 1st DCA 1984)).

For the reasons stated in the strict liability section, the Court finds that the warnings in this case were adequate as a matter of law, there was no causation established by plaintiff, and that no negligent failure to warn claim has been established. Summary judgment will be granted in favor of defendant as to this portion of the negligence claim.

### B. Design Defect

■■■■■ Plaintiff also brought a design defect claim on the theory of negligence. The basic elements of a negligence action are well-established: (1) a legal duty on the part of the defendant towards the plaintiff under the circumstances; (2) a breach of that duty by the defendant; (3) the defendant's breach of duty was both the actual and proximate cause of the plaintiff's injuries; and (4) the defendant suffered damages as a result of the breach. *Humphreys*, 839 F.Supp. at 829 (citing *Paterson v. Deeb*, 472 So.2d 1210, 1214 (Fla. 1st DCA 1985); *Simon v. Tampa Electric Co.*, 202 So.2d 209 (Fla. 2d DCA 1967). A prima facie case of products liability negligence, similar to an action for common law negligence, requires some evidence that the defendant breached a duty which actually and proximately caused plaintiff's injury. *Stanley Indus., Inc.*, 784 F.Supp. at 1573; *see also Marzullo v. Crosman Corp.*, 289 F.Supp.2d 1337, 1342 (M.D.Fla.2003)(citing *Stazenski v. Tennant Co.*, 617 So.2d 344, 345–46 (Fla. 1st DCA 1993). The plaintiff also must establish that the product was defective or unreasonably dangerous. *Marzullo*, 289

F.Supp.2d at 1342 (citing *Siemens Energy & Automation v. Medina,* 719 So.2d 312, 315 (Fla. 3d DCA 1998) *rev. denied,* 733 So.2d 516 (Fla.1999)).

 Florida law imposes a broad duty of care in the negligence context.

Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. As we have stated, "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Kaisner [v. Kolb],* 543 So.2d [732,] 735 (Fla.1989) (citing *Stevens v. Jefferson,* 436 So.2d 33, 35 (Fla. 1983)).... Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken. *J.G. Christopher Co. v. Russell,* 63 Fla. 191, 58 So. 45 (1912).

*Jennings,* 181 F.3d at 1257 (quoting *McCain v. Florida Power Corp.,* 593 So.2d 500, 503 (Fla.1992). It, however, is not reasonable to require a defendant to take all possible measures to ensure that its product was accident proof. *Husky Indus., Inc.,* 434 So.2d at 991.

The Court concludes that plaintiff has identified sufficient record evidence in his response to the summary judgment motion to establish that there are sufficient issues of disputed material fact as to the design defect theory of her negligence claim. Therefore, the summary judgment motion will be denied as to this aspect of the claim.

### IV.

Defendant seeks summary judgment as to damages incurred by the father. The father is not a party to this action, and it is not clear to the Court that plaintiff may recover damages for damages the father may have suffered. The Court will deny this aspect of the summary judgment motion, but revisit the matter at the pretrial conference.

Accordingly, it is now

**ORDERED:**

Defendant Graco Children's Products, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. # 41) is **GRANTED** as to the failure to warn strict products liability portion of Count I and the failure to warn negligence portion of Count II, and is otherwise **DENIED**. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED.**