907 So.2d 596 (2005)
KOHLER CO., Appellant,
v.
Timothy R. MARCOTTE, et al., Appellees.
No. 3D04-296.
District Court of Appeal of Florida, Third District.
July 20, 2005.
*597 Hicks & Kneale and Mark Hicks, Miami; and Wilson Elser Moskowitz Edelman & Dicker, for appellant.
Joel S. Perwin; Billbrough & Marks, Miami; and Brett A. Weinberg, for appellees.
Before WELLS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
ROTHENBERG, Judge.
The defendant, Kohler Co., appeals a final judgment following a jury trial in favor of the plaintiffs, Timothy R. Marcotte and Cindy L. Marcotte, Individually and as Legal Guardians of Timothy N. Marcotte, a minor. We reverse.
In January 1998, Timothy N. Marcotte ("child"), who was seven years old at the time, was permanently injured when his left dominant hand came in contact with the rotating plastic air intake screen on the "Magnum 20" engine of a riding lawn mower called the Dixie Chopper X2000[1] ("lawn mower"). The rotating screen was not covered by any sort of protective guard.
The plaintiffs brought suit against various defendants including Magic Circle Corporation, the manufacturer of the lawn mower; Power Mower Sales, Inc., the retail dealer that sold the lawn mower; and Kohler, the manufacturer of the "Magnum 20" engine. The claims against Kohler were for strict liability, failure to warn, and negligence. Kohler filed a counterclaim against the child's mother for negligent operation of the lawn mower and negligent failure to supervise the child. All defendants, except Kohler, settled with the plaintiffs.
The evidence at trial established that Kohler is a component manufacturer. As *598 a component manufacturer, Kohler designs and manufactures small engines, such as the "Magnum 20", and then sells these engines to an original equipment manufacturer ("OEM"), such as Magic Circle. The OEM incorporates the engine into its final product designed and assembled by OEM.[2] The "Magnum 20" engines are incorporated into a wide variety of products including pressure washers, go carts, generators, and lawn mowers. While Kohler engaged in an application review, its review was limited to whether the "Magnum 20" engine had sufficient horsepower and heat exchange to adequately run the lawn mower. Kohler did not review the design of the lawn mower for safety. Prior to the manufacturing of the lawn mower, Magic Circle knew that a grass shield was available which fits over the entire engine blower housing, including the plastic air intake screen.[3] Magic Circle unilaterally decided not to install the guard because it believed that it was not needed. As Magic Circle's president testified, a fixed guard was not installed because the rotating air intake screen was adequately guarded as a result of its design of the lawn mower. Specifically, Magic Circle believed that the oil coolers or radiators that were above the plastic air intake screen adequately acted as a barrier.
The jury returned a verdict finding that: Kohler had placed a defective engine on the market; Kohler was negligent; the mother was not negligent; Magic Circle was 25% liable; Kohler was 75% liable; the child's damages for past and future medical expenses were $100,000; the child's damages for future lost earning ability were $500,000; and the child's damages for pain and suffering were $2,000,000.
Kohler's post-trial motion for directed verdict, motion for new trial, and alternative motion for remittitur were denied. This appeal followed.
Kohler contends that the trial court erred in failing to grant its motion for directed verdict. We agree.
As provided in the Restatement (Third) of Torts: Products Liability § 5 (1997), which is titled "Liability of Commercial Seller or Distributor of Product Components for Harm Caused by Products Into Which Components Are Integrated," the manufacturer/seller of a component part may be held liable, but only under limited circumstances:
One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:
(a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or

*599 (b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and
(2) the integration of the component causes the product to be defective, as defined in this Chapter; and
(3) the defect in the product causes the harm.
Comment a. to § 5 provides:
As a general rule, component sellers should not be liable when the component itself is not defective as defined in this Chapter. If the component is not itself defective, it would be unjust and inefficient to impose liability solely on the ground that the manufacturer of the integrated product utilizes the component in a manner that renders the integrated product defective. Imposing liability would require the component seller to scrutinize another's product which the component seller has no role in developing. This would require the component seller to develop sufficient sophistication to review the decisions of the business entity that is already charged with responsibility for the integrated product.
Therefore, components sellers are subject "to liability when the components themselves are defective or when component providers substantially participate in the integration of components into the design of the other products." Id. at § 5 cmt. a.
Here, the evidence clearly demonstrates that Kohler did not participate in the integration of its engine into the lawn mower. Magic Circle designed the lawn mower without any input or assistance from Kohler, and Kohler did not assist Magic Circle in installing the engine into its lawn mower. Kohler engaged in an application review, but its review was limited to whether the "Magnum 20" engine had sufficient horsepower and heat exchange to adequately run the lawn mower. Kohler did not review and was not asked to review the design of the lawn mower for safety. Further, Magic Circle, not Kohler, unilaterally decided to not install a guard, such as the grass shield, because Magic Circle believed that its design of the lawn mower, which included the placement of the radiators (oil coolers) directly above the air intake screen, sufficiently guarded the air intake screen. Therefore, because Kohler did not participate in the integration of the engine into the lawn mower, Kohler, as a component manufacturer, cannot be held strictly liable for the injuries sustained by the child unless the "Magnum 20" engine is "defective in itself."
Section 2 of the Restatement of Torts provides:
A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial *600 chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.
In this case, the plaintiffs contend that the engine was defective because it was defectively designed and because it had inadequate warnings. Kohler designed a generic engine that can be used in various applications. Depending on the particular application and the ultimate placement of the engine in the final product, a guard may or may not be necessary. The engine was not "defective in itself" and operated exactly as it was designed to operate. As the engine was not defective in itself, it would be unjust to hold Kohler strictly liable where it was Magic Circle who designed the final product, integrated the engine into this product, and determined that a guard was not necessary due to its own design. It only makes sense to place the burden of scrutinizing the final product for safety on the OEM because it is this entity which designed and developed the final product.
We also conclude that Kohler had no duty to warn of the rotating plastic air intake screen. When Kohler sold the completed engine to Magic Circle, any danger resulting from the rotating air intake screen was open and obvious, and therefore, Kohler had no duty to warn. See Scheman-Gonzalez v. Saber Mfg. Co., 816 So.2d 1133, 1139 (Fla. 4th DCA 2002) ("Unless the danger is obvious or known, a manufacturer has a duty to warn where its product is inherently dangerous or has dangerous propensities."). The rotating air intake screen became a hidden danger as a result of Magic Circle's design and integration of the engine into the lawn mower, thereby placing the duty to warn the public with Magic Circle, not Kohler. Thus, the trial court erred in denying Kohler's motion for directed verdict.
This conclusion is supported by case law from this court. In Ford v. International Harvester Co., 430 So.2d 912 (Fla. 3d DCA), review denied, 441 So.2d 631 (Fla. 1983), International Harvester manufactured a truck cab and chassis which it knew would be integrated into a trash truck. The manufacturer of the trash truck ordered the cab and chassis without a back-up warning signal. In affirming the entry of a directed verdict in favor of the manufacturer of the cab and chassis, this court relied upon Verge v. Ford Motor Co., 581 F.2d 384 (3d Cir.1978). In Verge, the manufacturer of a cab and chassis, sold these items to a company that incorporated them into a garbage truck. While the jury found against the manufacturer of the cab and chassis, the Third Circuit reversed and ordered that a judgment be entered in favor of the manufacturer of the cab and chassis. In Ford, we noted a similar holding in Elliott v. Century Chevrolet Co., 597 S.W.2d 563 (Tex.Civ.App.1980), which also relied upon Verge. In Elliott, General Motors ("G.M.") manufactured and sold a cab and chassis to another company that installed a beer storage unit onto the cab and chassis, thereby turning the cab and chassis into a beer truck. Neither G.M. nor the other company installed a back-up warning buzzer, and a person was killed when the truck backed-up over him. The trial court granted summary judgment in favor of G.M. and the appellate court affirmed, holding that there are:
three factors which must be considered in determining the responsibility for the absence of a safety device when a finished product is the result of substantial work done by more than one party. These factors are trade custom, relative expertise of the parties and practical considerations. Trade custom deals with identifying the state of the entire process resulting in the finished product *601 at which the safety device is normally installed.
Relative expertise deals with identifying which party is best acquainted with the design problems and safety techniques involved when a modification is made to a product by someone other than the primary manufacturer. In the instant case, the beer storage unit was added to the truck chassis by a company who remains a defendant in Elliott's case. G.M. is not in the business of manufacturing beer trucks nor is it customarily engaged in the business of adding beer storage units to any chassis it has manufactured. It would appear from this that the company which added the beer storage unit, and not G.M., would have the expertise to assess design implications and ramifications on safety which any design changes might require.
On the issue of practicability of installing the backup buzzer, this would appear to fall on the party modifying the truck chassis. G.M. merely manufactured a chassis which could be put to a number of uses. Some of these uses might be ones where no backup buzzer would be required. In addition, if G.M. were to have installed a backup buzzer on every chassis it made, there could arise circumstances where certain types of modifications would require the removal or relocation of the buzzer in order to accommodate the modifications. We concluded that it would be more practical for the party adding the beer storage unit, like the party which added the garbage compactor in Verge, to install any needed buzzer. (Pages 563-564).
In applying the factors set forth in Elliott, we conclude that Kohler cannot be held liable for the injuries sustained by the plaintiff. (1) Trade custom: Magic Circle, as the manufacturer of the lawn mower, is bound by the power lawn mower American National Standards Institute (ANSI) standards pertaining to the guarding of moving parts, and the placement of warning labels on the finished lawn mower. (2) Relative expertise: Kohler is in the business of manufacturing small engines, not lawn mowers. It was Magic Circle, not Kohler, who designed the lawn mower and determined that it was not necessary to guard the air intake screen. Magic Circle's decision was based, in part, on its design of the lawn mower. Magic Circle, not Kohler, should have the necessary "expertise to assess design implications and the ramifications on safety which any design changes might require." (3) Practicability of installing a guard: It would be more practical for Magic Circle, the party integrating the engine into its finished product, to determine whether a guard is necessary. As explained earlier, based on the application and/or design of the finished product, a guard may or may not be necessary. Further, if Kohler installed a guard on every engine that it manufactured, in some instances, the manufacturer of the final product may be forced to remove the guard in order to integrate the engine into its finished product.
As the resolution of the above issue is dispositive, we do not address the remaining issues raised by Kohler.
Reversed and remanded for entry of final judgment in favor of Kohler.
NOTES
[1] The Dixie Chopper X2000 is a commercial grade riding lawn mower with the engine located behind the operator's seat.
[2] The plaintiffs' attorney asserted several times in his brief that Kohler assembled and installed the engine into the lawn mower. The evidence unequivocally demonstrates that Kohler assembled the engine and then sold the assembled engine to Magic Circle, and that Magic Circle, not Kohler, then installed the engine into the lawn mower.
[3] In addition to the grass shield, Kohler also manufactured an optional shield that fits directly over the plastic air intake screen. Magic Circle's president testified that prior to the manufacturing of the lawn mower, Kohler never told Magic Circle that this optional guard was available. On the other hand, Kohler's representative testified that Magic Circle knew about this guard before the engine was sold to Magic Circle. It is undisputed, however, that Magic Circle learned of this optional guard prior to the accident but opted to not recall the lawn mower because it believed that the plastic air intake screen was sufficiently guarded by the radiators.